STATE, APPELLANT, *v.* ROULEAU ET AL., RESPONDENTS.

(No. 5,296.)

(Submitted September 14, 1923.   Decided October 26, 1923.)

[219 Pac. 1096.].

*Intoxicating Liquors—Forfeitures—Seizure Without Warrant—Special Enforcement Officers—Appointment—State Board of Examiners—Evidence—Presumptions.*

Intoxicating Liquors—Arrest and Seizure Without Warrant—When Jus-tified.

1. Under section 11106, Revised Codes of 1921, an arrest of an offender against the Prohibition Act or the seizure of intoxi-cating liquor or fixtures used in connection with its sale, without a warrant, is not justified unless the offense was committed in the presence of an officer.

Same—Special Enforcement Officers—Improper Record of Appointment.

2. The secretary of the state board of examiners which is em-powered by section 11085, Revised Codes of 1921, to appoint special enforcement officers, is the secretary of state and not the clerk of that board, and therefore a copy of the minutes of the board cer-tified by the clerk instead of its secretary—the legal custodian of its records—in an attempt to show the appointment of a special enforcement officer was properly excluded from the evidence.

Same — Deputy Special Enforcement Officers — Improper Appointment — Ratification a Nullity.

3. Section 11085, Revised Codes of 1921, makes no provision for the appointment of a deputy special enforcement officer, and there-fore the action of the state board of examiners in attempting to ratify such an appointment as a special enforcement officer after he had made a seizure as deputy was a nullity.

68 Mont.—34

Officers—Appointment in Writing—Parol Testimony Inadmissible.
    4. Where the law provides that an officer shall be appointed in writing, the record is the best evidence and parol testimony. is inadmissible to show the facts of his appointment.

Intoxicating Liquors—Special Enforcement Officers—Appointment—How Proven.
    5. Under the above rule (par. 4) the appointment of a special prohibition enforcement officer, required to be in writing, may be proven only by formal commission signed by the governor as presiding officer of the state board of examiners, the appointing body, or by a copy of the record of appointment certified by the secretary of state as its secretary.

Same—Offense Committed in Presence of Officer—Forfeitures—Jurisdictional Facts—Evidence—Presumptions.
    6. Where a forfeiture of intoxicating liquor and fixtures is sought under section 11106, Revised Codes of 1921, the state must establish as jurisdictional facts that the person making the seizure was an officer and that the offense against the Prohibition Act was committed in his presence, and in such a case recourse may not be had to presumptions.

Same—Forfeitures—Costs Recoverable from State.
    7. A proceeding for the forfeiture of intoxicating liquors and property used in violation of the prohibition law and seized under section 11106, Revised Codes of 1921, which proceeding is neither a criminal nor a civil action but is special in its nature, and in which the claimant was made a party defendant, costs may be awarded the claimant against the state when it is the losing party.

*Appeal from District Court, Silver Bow County; Joseph R. Jackson, Judge.*

ACTION by the State against O. Rouleau and John Turner and certain intoxicating liquors. Judgment for defendants and plaintiff appeals. Affirmed.

*Mr. Wellington D. Rankin,* Attorney General, and *Mr. Frank Woody,* Assistant Attorney General, for Appellant, submitted a brief; *Mr. L. V. Ketter,* Assistant Attorney General, argued the cause orally.

*Messrs. Wheeler & Baldwin,* for Respondents, submitted a brief; *Mr. James H. Baldwin* argued the cause orally.

Where an officer acts under a naked statutory power with a view to divest, upon certain contingencies the title or right of a citizen, the regularity of the proceedings will not be presumed, but it is incumbent upon the person claiming by virtue

of them to show that every preliminary step required by law has been taken. . (Mechem on Public Officers, sec. 581; *Norris v. Russell,* 5 Cal. 249; *Keane* v. *Cannovan,* 21 Cal. 291, 292, 299, 82 Am. Dec. 738; *Hess* v. *State,* 84 Okl. 73, 202 Pac. 310, 313; *State ex rel. Samlin* v. *District Court,* 59 Mont. 600, 198 Pac. 362; *Westover* v. *Calder,* 64 Mont. 264, 209 Pac. 306.) The presumption in favor of the legality of official acts never goes to the extent of supplying a jurisdictional fact. (*Hannah* v. *Chase,* 4 N. D. 351, 50 Am. St. Rep. 656, 61 N. W. 18, 20.) Authority to do an act will not be presumed simply because the act was done. (*Short* v. *Symmes,* 150 Mass. 298, 15 Am. St. Rep. 204, 23 N. E. 42.)

MR. JUSTICE GALEN delivered the opinion of the court.

This is an action brought under the statute to obtain a judgment of forfeiture of certain intoxicating liquors and personal effects on the theory that the liquor and property had been used in violation of the law prohibiting the sale of intoxicating liquors, authorizing confiscation without warrant where the offense occurs in the presence of an officer. No property other than "certain intoxicating liquors" is joined in the proceeding.

It appears that on November 27, 1922, N. J. Sero and Al. Bentley appeared before Joseph R. Jackson, one of the judges of the district court of Silver Bow county, and made affidavit which, omitting the formal portions, recites: "That on the 14th day of September, 1922, N. J. Sero was duly and regularly appointed special prohibition law enforcement officer for the state of Montana; that on said 14th day of September, 1922, said N. J. Sero duly and regularly qualified as special prohibition law enforcement officer for the state of Montana, and ever since has been and now is a duly and regularly appointed, qualified, and acting special prohibition law enforcement officer for the state of Montana; that on the 14th day of November, 1922, Al. Bentley was duly and regularly appointed deputy special prohibition law enforcement officer for

the state of Montana; that on said 14th day of November, 1922, said Al. Bentley duly and regularly qualified as deputy special prohibition law enforcement officer for the state of Montana, and ever since has been and now is a duly and regularly appointed, qualified and acting deputy special prohibition law enforcement officer for the state of Montana; that on or about the 20th day of November, 1922, at the county of Silver Bow, Montana, the above-named defendants, in the presence of the complainants herein, were guilty of the crime of a misdemeanor, to wit, violation of the prohibition law of the state of Montana, committed as follows, to wit: That at said county and state aforesaid, on or about the 20th day of November, 1922, and before the filing of this complaint, the said defendants, in the presence of the said complainants, willfully, unlawfully, wrongfully and intentionally did then and there sell, deliver, barter, furnish, possess and transport intoxicating liquors at and in the place and storeroom commonly known as No. 135 East Park street, Butte, Silver Bow county, Montana.'' '

To this complaint there was attached a return particularly describing the property seized, subscribed as follows: ''N. J. Sero, a Special Prohibition Law Enforcement Officer; Al. Bentley, a Deputy Special Prohibition Law Enforcement Officer.''

A warrant was thereupon issued commanding the holding of the property by ''the said N. J. Sero, special prohibition law enforcement officer for the state of Montana, and the said Al. Bentley, deputy special prohibition law enforcement officer for the state of Montana.''

On November 21, 1922, after seizure of such property, W. E. Carroll, one of the district judges of Silver Bow county, upon application of the defendant O. Rouleau, issued an order to show cause and temporary injunction directed against N. J. Sero, restraining him from removing the property described or any portion of it, or in any way interfering with Rouleau's possession and control until after hearing set for November

25, 1922. On December 15, 1922, O. Rouleau made and filed his duly verified claim of ownership of the property, except the whisky, and therein denied that either he or the defendant John Turner were guilty of a violation of the prohibition laws of the state "in presence of peace officers otherwise or at all."

The case came on for hearing before Judge Jackson, sitting without a jury, on December 29, 1922, on the complaint filed herein by N. J. Sero and Al. Bentley, as aforesaid, and the verified claim of the defendant Rouleau. Testimony was offered by the state and excluded by the court, and offers of proof in support of the state's case denied. Whereupon, on motion of the defendant Rouleau, the proceedings were dismissed, and the property ordered to be returned to Rouleau on the ground of failure of proof to establish a case justifying the confiscation or condemnation of any of the property. Judgment was entered accordingly.

In the judgment it is recited that the testimony taken at the hearing "did not, show that either N. J. Sero or Al. Bentley was ever at any time or at all a special prohibition law enforcement officer for the state of Montana, or that any violation of any provision of the laws of this state relating to intoxicating liquors had occurred in the presence of any sheriff, constable, marshal or other officer having the power to serve criminal process or any other officer and did not warrant a judgment forfeiting any of the property described in the verified claim of O. Rouleau or an order that any part of it be destroyed." The defendant Rouleau was awarded costs taxed at $55.50.

The record embodies two bills of exception, one as to the proceedings at the trial, and the other with respect to the taxation of costs. Twenty-four specifications of error are assigned, presenting but two questions necessary for decision, *viz.:* (1) Was the evidence offered by the state sufficient to show that the alleged offense was committed in the presence of an officer; and (2) Did the court err in taxing costs against the state?

1. Section 11106 of the Revised Codes of Montana of 1921
provides: "When any violation of any provisions of the laws
[1] of this state relating to intoxicating liquors shall occur
in the presence of any sheriff, constable, marshal, or other
officer having power to serve criminal process, it shall be the
duty of such officer, without warrant, to arrest the offender,
and to seize the liquor, bars, furniture, fixtures, vessels and
appurtenances thereunto belonging, so unlawfully used, and
to take such offender immediately before the court or judge
having jurisdiction in the premises and there make complaint
under oath charging the offense so committed, and he shall also
make return setting forth a particular description of the liquor
and property seized and of the place where the same was so
seized, whereupon the court or judge shall issue a warrant com-
manding and directing the officer to hold in his possession the
property so seized, until discharged by process of law, and
such property shall be held and a hearing or adjudication on
said return had in like manner as if the seizure had been
made under a warrant therefor."

From a reading of this statute it will be noted that an ar-
rest and seizure without a warrant are not justified unless the
offense shall occur in the presence of a "sheriff, constable,
marshal or *other officer* having power to serve criminal pro-
cess." So that we must determine whether the proof offered
[2] by the state was sufficient to show that N. J. Sero and
Al. Bentley, or either of them, were officers.

The statute relative to appointment of special officers for the
purpose of enforcing the laws relative to intoxicating liquors
reads: "The state board of examiners may appoint such special
officers, not to exceed six in number, for the purpose of en-
forcing the laws relating to intoxicating liquors; such special
officers shall have the same powers as sheriffs concerning the
enforcing of the laws relating to intoxicating liquors, and
shall receive such compensation as the board of examiners
may prescribe, which shall be paid out of the 'law enforcement
fund'; provided, however, that such special officers shall not be

paid from any other fund or funds. Such special officers shall be appointed in writing by the state board of examiners, and before entering upon their duties shall take and subscribe the oath of office in the same manner as a sheriff. The state board of examiners may remove such special officers from office at any time." (Sec. 11085, Rev. Codes 1921.)

No question arises as to the authority of the board of examiners to appoint such officers; but was the evidence of the appointment sufficient under the statute? The offer of proof made of the appointment of such officers and the rulings of the court thereon necessary to be considered are as follows:

"Mr. Tyvand: We now offer to prove by the witness on the stand the contents of the following paper, marked 'Plaintiff's Exhibit 1 for Identification,' which is as follows:

" 'Helena, Mont., Aug. 21, 1922.

" 'The state board of examiners met in special session this day at 2:30 o'clock P. M. Present, Jos. M. Dixon, chairman, and Secretary of State C. T. Stewart, secretary. The appointment of the following enforcement officers with the date of service of each set forth was approved by the board as follows: W. H. Countryman, Sept. 14, 1922, until revoked. N. J. Sero, Sept. 14, 1922, until revoked. There being no further business to come before the board, the meeting adjourned.

" 'Jos. M. DIXON, Chairman.

" 'C. T. STEWART, Secretary.

" 'I, A. E. McFatridge, clerk of the state board of examiners, do hereby certify that the above is a true and correct copy of the minutes of the proceedings of the state board of examiners held August 21, 1922, as pertains to the appointment of W. H. Countryman and N. J. Sero, special law enforcement officers; and I further certify that their commissions have not been revoked to date.

" 'A. E. McFATRIDGE,

" 'Clerk, State Board of Examiners.

" 'State of Montana,

" 'County of Lewis and Clark,—ss.

" 'A. E. McFatridge, being duly sworn on his oath, deposes and says: That he is the duly appointed, qualified and acting clerk of the state board of examiners of the state of Montana and that he was such clerk of the state board of examiners on August 21, 1922, and as such clerk is custodian of all books and records belonging to the office of state board of examiners.

" 'A. E. McFatridge.

" 'Subscribed and sworn to before me this 18th day of December, 1922.

" ' [Seal.]                                    L. A. Foot,

" 'Notary Public for the State of Montana, Residing at Helena, Mont.

" 'My commission expires May 23, 1923.'

"The Court: Let the record show that this exhibit is offered for the purpose of proving the official authority of the witness on the stand, N. J. Sero. (Document marked 'Plaintiff's Exhibit 2 for Identification.')

"Q. I hand you Plaintiff's Exhibit 2 for Identification, and ask you if you have ever seen that paper before? A. Yes, I have.

"Q. When and where did you see that before? A. Something over a week ago. The 16th of December, 1922.

"Q. Where? A. Helena, Montana.

"Q. Who is the person named therein as N. J. Sero? A. That is myself.

"Q. And where did you see that paper about 10 days ago? A. This paper was handed to me by the deputy secretary of state for Montana at Helena, Montana.

"Mr. Tyvand: At this time we offer in evidence Plaintiff's Exhibit 2 for Identification.

"Mr. Baldwin: To which the claimant, O. Rouleau, objects, on the ground and for the reason that it is incompetent, irrelevant and immaterial; purporting to be a certified copy of an oath of office, taken by Mr. Sero, and there being no show-

ing of record that he was ever appointed to any office under the statutes of the state of Montana. Foundation for the production of oath of office not having been properly laid, and until the appointment in legal manner is proven the oath being of no consequence.

"The Court: If this contained copy of the appointment of Mr. Sero it would be competent; as it is, I must sustain the objection. It has to be in writing. (To which ruling of the court counsel for plaintiff asked and was granted an exception.)

"Mr. Tyvand: We offer to prove by the witness on the stand, through this Plaintiff's Exhibit No. 2 for Identification, the following:

" 'Department of the Secretary of State of the State of Montana.

" 'Certificate.

" 'United States of America,

" 'State of Montana,—ss.

" 'I, C. T. Stewart, secretary of state of the state of Montana, do hereby certify that I have compared the annexed copy of oath of office of N. J. Sero with the original thereof filed in my office on the 15th day of September, 1922, and that the same is a correct transcript thereof, and of the whole of said original. In testimony whereof, I have hereunto set my hand and affixed the great seal of the state of Montana, this 16th day of December, A. D. one thousand nine hundred and twenty-two.

" ' [Seal]                                    C. T. STEWART.

" 'By CLIFFORD L. WALKER, Deputy.

" 'State of Montana,

" 'County of Lewis and Clark,—ss.

" 'I, N. J. Sero, do solemnly swear that I will support, protect and defend the Constitution of the United States and the Constitution of the state of Montana, and that I will discharge the duties of my office of special state prohibition officer with fidelity, and that I have not paid or contributed or promised

to pay or contribute, either directly or indirectly, any money or other valuable thing to procure my appointment, except for necessary and proper expenses expressly authorized by law; that I have not knowingly violated any election laws of this state or procured it to be done by others in my behalf; that I will not knowingly receive, directly or indirectly, any money or other valuable thing for the performance or nonperformance of any act or duty pertaining to my office other than the compensation allowed by law.

" '[Signed]   N. J. SERO.

" 'Subscribed and sworn to before me this 14th day of September, 1922.

" '[Seal.]                    HELENA C. STELLWAY,

"Notary Public for the State of Montana, Residing at Helena.

" 'My commission expires May 19, 1923.

" 'Filed Sept. 15, 1922.   C. T. Stewart, Secretary of State, VFH.'

"(Document marked 'Plaintiff's Exhibit 3 for Identification.')

"Q. I hand you Plaintiff's Exhibit 3 for Identification, and ask you if you have ever seen that paper before?   A. Yes; I did.

"Q. When and where did you see it before?   A. Sixteenth day of December, 1922.

"Q. Where?   A. Eighteenth day of December, at the office of the clerk of the state board of examiners of the state of Montana, at Helena, Montana.

"Q. And whose signature is on there?   A. A. E. McFatridge.

"Q. Who is A. E. McFatridge?   A. Clerk of the state board of examiners.

"Q. How do you know that is the signature of A. E. McFatridge?   A. I saw him write it on there.

"Q. How long have you been personally acquainted with A. E. McFatridge?   A. Several months.

"Q. Who is the person referred to in there as 'Al. Bentley'?   A. The gentleman sitting back in the courtroom there.

"Mr. Tyvand: We offer in evidence Plaintiff's Exhibit 3 for Identification.

"The Court: Is that identical with Exhibit 1, except the name?

"Mr. Tyvand: Not exactly, your honor.

"Mr. Baldwin: We make the same objection that we made to the introduction of offered Exhibit 1.

"The Court: Sustained.

"Mr. Tyvand: We offer to prove by witness on the stand, through Plaintiff's Exhibit A for Identification, the following:

" 'Helena, Mont., Nov. 22, 1922.

" 'The state board of examiners met in special session this day at 2:30 o'clock P. M. Present: Lieut. Gov. Nelson Story, Jr., chairman *pro tem.* Attorney General Wellington D. Rankin. The appointment of Al. Bentley as a special law enforcement officer for a term beginning November 14, 1922, and ending November 26, 1922, was ratified by the board. There being no further business before the board, the meeting adjourned. Nelson Story, Chairman *pro tem.*

" 'WELLINGTON D. RANKIN,

" 'Attorney General.

" 'I, A. E. McFatridge, clerk of the state board of examiners, do hereby certify that the above is a true and correct copy of the minutes of the proceedings of the state board of examiners held November 22, 1922, as pertains to the appointment of Al. Bentley, special law enforcement officer.

" 'A. E. McFATRIDGE,

" 'Clerk, State Board of Examiners.

" 'State of Montana,

" 'County of Lewis and Clark,—ss.

" 'A. E. McFatridge, being first duly sworn on his oath, deposes and says: That he is the duly appointed, qualified and acting clerk of the state board of examiners of. the state of Montana and that he was such clerk of the state board of examiners on November 22, 1922, and as such clerk is cus-

todian of all books and records belonging to the office of state board of examiners.

" 'A. E. MCFATRIDGE.

" 'Subscribed and sworn to before me this 18th day of December, 1922.

" '[Seal.]                                    L. A. FOOT,

" 'Notary Public for the State of Montana, Residing at Helena, Mont.

" 'My commission expires May 23, 1923.' "

Does this offered evidence suffice to establish *prima facie* the fact that N. J. Sero and Al. Bentley were appointed *in writing* as special officers for the purpose of enforcing the laws relating to intoxicating liquors, and that they took the necessary oath of office? If so, the judgment should be reversed; otherwise it must be affirmed.

Section 426 of the Revised Codes of 1921 provides for the commissions of officers which must issue from the governor, and section 427 prescribes the form thereof. Then follows section 428, which reads as follows: "The commissions of all other officers, where no special provision is made by law, must be signed by the presiding officer of the body or by the person making the appointment."

We must now turn to the Chapter providing for the board of examiners, and we find by section 233 that "the governor is the president and the secretary of state is the secretary" of such board, and it is required to "keep a record of all its proceedings." (*Id.*, sec. 234.) No provision is specially made by law for the appointment of "clerk to the state board of examiners," nor are his duties prescribed. The only statutory provision bearing upon the subject, being the authority of the board to appoint necessary clerks (*Id.*, sec. 268), and provision that "the annual compensation allowed to the following named state officer and clerks at the state capitol, is as follows: State board of examiners, clerk, three thousand dollars * * * " (*Id.*, sec. 437).

In the purported minutes offered it does not appear when or by whom these alleged special officers were appointed. For aught that appears of record in the minutes tendered the appointment may have been made by one of the janitors or the landscape gardener at the state capitol building. It will be noted from the language stated that such appointments must be made by the state board of examiners, and by no one else, and, in the absence of such an appointment made as the statute requires, in writing, there is no appointment at all. In our opinion the certified copy of the minutes of the board, certified to by the secretary of state as the legal custodian of the board's minutes and record of proceedings, showing that N. J. Sero was duly and regularly appointed by the board, would have been sufficient (secs. 10543 and 10573, Rev. Codes 1921), but the character of proof tendered in the present instance respecting the appointment amounted to no more than so many scraps of paper. Without an appointment *in writing* as such a special officer in advance of the confiscation of claimant's property, Sero occupied no different position than any ordinary citizen. To justify the acts of the complainants it should have been affirmatively shown that at least one of them was a regularly appointed officer. This was not done; therefore there was no evidence to show that the offense, if any was committed, was perpetrated in the presence of an officer.

[3] The law does not recognize such officer as "deputy special prohibition law enforcement officer," and the attempted ratification of the appointment of Al. Bentley as a "special law enforcement officer" was for naught. Such loose methods cannot be tolerated in the administration of statutes of this character, involving possible summary confiscation of property. The evidence of his appointment tendered was properly excluded.

The correct rule is well stated by Professor Wigmore in [4] his splendid treatise on the Law of Evidence, as follows: "Where by law an act is *required to be done in writing, i. e.,* is ineffective unless so done, the writing is of course the only

permissible subject of proof. It is immaterial what the person intended; his act must be in the writing and must be judged by the writing alone." (Sec. 2427, Wigmore on Evidence.)

When question arises as to whether a particular person is a public officer, the record is the best evidence, and parol evidence will be excluded where the statute expressly provides the method of appointment. (22 C. J. 1004.) Here the statute [5] requires the appointment of such officers *to be in writing.* It contemplates, first, a written commission, and, second, an oath of office before they shall enter upon their duties. (Sec. 11085, *supra.*) Such officers' authority is susceptible of proof either by formal commission signed by the governor as the presiding officer of the board of examiners or by a copy of the record of the appointment certified to by the secretary of state as secretary of the state board of examiners. Nothing short thereof will suffice as evidence of the authority with which they are clothed.

The legal presumption contended for by the Attorney General (sec. 10606, Rev. Codes 1921) has no application [6] here, for in this case there are two distinct jurisdictional requirements necessary to support the state's case, *viz.:* First, it must appear that the person in whose presence the offense was committed was an officer; second, that the offense was committed in his presence. Failing to assume the burden and prove such facts the case must fall of its own weight, and resort to presumptions will not avail. The state had ample time and opportunity to establish by competent evidence the regular appointment of Sero as such special officer, and why it failed to do so is difficult to understand. Such appointments should be evidenced by written commissions signed by the governor as president of the board of examiners. (Sec. 428, Rev. Codes 1921.) Had this been done in the present instance the state would have encountered no difficulty in establishing the authority of the officers. No presumptions will be indulged in this character of case involving as it does the forfeiture of property.

We must and do hold that the certified minutes as offered in evidence in this case were of no evidentiary value, and were properly excluded. No presumption attaches with respect to capacity of "A. E. McFatridge, Clerk, State Board of Examiners." The clerk, if in fact one there is, is not the official custodian of the board's records, nor the person authorized to issue commissions to the board's appointees. The secretary of the board, of whom a court would take judicial notice, is the secretary of state. In our opinion, therefore, the court was correct in dismissing the proceeding for failure of proof, and in entering judgment for the return of the property involved to the claimant.

2. This brings us to a consideration of the question of costs. [7] Section 9788, Revised Codes of 1921, provides: "Costs must be allowed, of course, to the defendant, upon a judgment in his favor in the actions mentioned in the next preceding section, and in special proceedings." The previous section referred to provides for the allowance of costs to plaintiffs in enumerated instances, among which are "in a special proceeding." (*Id.*, sec. 9787.) This action must be classed as a special proceeding, for the statute provides:

"Remedies are divided into two classes: Actions, and special proceedings." (*Id.*, sec. 8996.) "An action is an ordinary proceeding in a court of justice by which one party prosecutes another for the enforcement or protection of a right, the redress or prevention of a wrong, or the punishment of a public offense." (*Id.*, sec. 8997.) "Every other remedy is a special proceeding." (*Id.*, sec. 8998.)

Here the proceeding is entirely *in rem*, wholly based upon statute; it is neither a civil nor criminal action (*Id.*, sec. 8999), and must be classed as a special proceeding. (*State ex rel. Prato* v. *District Court*, 55 Mont. 560, 179 Pac. 497; *State* v. *Kelly*, 57 Mont. 123, 187 Pac. 637.) Costs are expressly authorized to be taxed against the state in prosecuting and defending actions. (Sec. 9810, Rev. Codes 1921.) In this case the claimant, Rouleau, was made a party defendant to the

proceeding, and therefore what is said in *State* v. *Kelly, supra,* has no application here.   Were he an independent third party claimant there would be merit in the contention of the attorney general.   In an action or proceeding there is no reason why the state should escape the payment of costs when the losing party; in fact, recognition of such liability is expressly given by the statute.   (Secs. 9810, 9814, Rev. Codes 1921.)

The judgment is affirmed.

*Affirmed.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES COOPER, HOLLOWAY and STARK concur.