Argued April 14, affirmed June 16, 1925.

## STATE *v.* ALBERT QUARTIER.

(236 Pac. 746.)

**Searches and Seizures—Search-warrant cannot be Lawfully Issued Except on Affidavit Stating Facts Warranting Finding of Probable Cause.**

1. Under Const. Or., Article I, Section 9, Const. U. S., Amend. 4, and Section 1854, Or. L., search-warrant for search of person's house cannot lawfully be issued, unless based on affidavit stating facts showing probable cause to believe law has been violated, and that issuance of warrant is justified; affidavits on information and belief, and affidavits merely alleging legal conclusions, being insufficient.

**Searches and Seizures—Probable Cause for Issuance of Search-warrants is Mixed Question of Law and Fact.**

2. Probable cause for issuance of search-warrants is mixed question of law and fact.

1. History and purpose of search-warrants, see note in 40 **Am. Dec.** 666.

Search of premises of private person, see note in 101 **Am. St. Rep.** 328.

Affidavit on information and belief as basis for search-warrant, see notes in 1 **Ann. Cas.** 653; 18 **Ann. Cas.** 819. See, also, 24 **R. C. L.** 707.

Affidavits—Depositions—"Deposition" Differs from "Affidavit," in That It is Taken With Notice to Adverse Party for Purpose of Enabling Him to Attend and Cross-examine.

3. Under Sections 826, 827, Or. L., distinction between "affidavit" and "deposition" is that latter is taken with notice to adverse party for purpose of enabling him to attend and cross-examine.

Searches and Seizures—Test of Sufficiency of Affidavit is Whether Perjury Could be Charged Thereon.

4. True test of sufficiency of affidavit to warrant issuance of search-warrant is whether it has been drawn in such a manner that perjury could be charged thereon if any material allegation contained therein is false.

Intoxicating Liquors—Affidavit Held to State Facts Warranting Finding of Probable Cause and Issuance of Search-warrant.

5. Affidavit of deputy of state prohibition commissioner, "that there is in possession of [defendant] * * in certain building [describing it] a still worm, wort, or mash and liquor in the county of M., State of Oregon, certain intoxicating liquor, to wit, * * " *held*, under .Const. Or., Article I, Section 9, Sections 1852–56, Or. L., and Const. U. S., Amend. 4, sufficient to warrant finding. of probable cause justifying issuance of search-warrant, in view of Sections 826, 827, 1736, 1941, Or. L.

Arrest—Search and Seizure Held Warranted as Incidental to Arrest Under Statute.

6. Search of defendant's premises and seizure of intoxicating liquor and still, *held* warranted as incidental to arrest, under Sections 1371, 1763, 1764, Or. L.

Arrest—Officer Need not See Crime Committed Before It can be Said to be Committed in His Presence.

7. For crime to be committed in presence of officer, it is not necessary that he see it committed, when any of his powers of observation, whether of sight, hearing or smell, indicate to him that crime is being ·committed.

---

3. See 1 R. C. L. 761.

4. See 1 R. C. L. 771.

5. Necessity and sufficiency of warrant for search for or seizure of intoxicating liquor, see notes in 3 A. L. R. 1514, 1516; 13 A. L. R. 1316; 27 A. L. R. 709, 711. See, also, 15 R. C. L. 412.

6. Right to search person and habitation of one under arrest, see note in 3 Ann. Cas. 354.

Entry and search of premises without search-warrant for purposes of arrest, see note in 5 A. L. R. 263.

What articles may be seized without search-warrant on making lawful arrest, see note in 32 A. L. R. 686. See, also, 2 R. C. L. 25.

7. Arrest without warrant for crime committed in officer's presence, see note in 9 Ann. Cas. 623. See, also, 2 R. C. L. 448.

Intoxicating Liquors—Evidence Held to Sustain Conviction for Un-
lawful Possession of Still.

8. Evidence *held* to sustain conviction for possession of still, not
registered as required by Laws of 1923, page 47, Section 6, and war-
rant denial of directed verdict of acquittal, in view of Constitution,
Article VII, Section 3c, relating to trial of questions of fact by jury.

Searches and Seizures—Search-warrant Executed by Three Deputy
Sheriffs Held Properly Executed, Regardless of Who Assisted
Them.

9. Search-warrant executed by three deputy sheriffs *held* properly
executed, regardless of who assisted them.

See (1) 2 C. J. 350, 354; 33 C. J. 675; 35 Cyc. 1266. (2) 35 Cyc.
1266. (3) 2 C. J. 318. (4) 35 Cyc. 1266. (5) 33 C. J. 675. (6)
33 C. J. 679 (1926 Anno.). (7) 33 C. J. 679. (8) 33 C. J. 758, 787.
(9) 35 Cyc. 1267.

From Multnomah: T. E. J. DUFFY, Judge.

In Banc.

The defendant, Albert Quartier, was indicted, tried
and convicted of the crime of having in his possession
a still not registered as required by law, in violation
of Section 6, Chapter 30 of the Laws of Oregon of
1923. From the judgment of conviction defendant
appeals. The facts portrayed by the record are sub-
stantially as follows:

On or about March 31, 1924, the defendant, to-
gether with his wife, was the proprietor and in pos-
session of a manufacturing establishment in a certain
building at No. 1182 Crystal Springs Boulevard, in
the City of Portland, Oregon. On that date L. R. M.
Pierce, a deputy of the State Prohibition Commis-
sioner, made and filed in the District Court for Mult-
nomah County, Oregon, an affidavit, the gist of which
is as follows:

"that there is in the possession of one Albert and
Nettie Quartier, sometimes known as Brown, in a
certain building at No. 1182 Crystal Springs Boule-
vard Street, in the City of Portland, a still worm,
wort or mash and liquor in the County of Multnomah,

State of Oregon, certain intoxicating liquor, to-wit:
* * and that said liquor is in the possession of the
said Albert and Nettie Quartier, *alias* Brown, with
the intent of the said Albert and Nettie Quartier,
*alias* Brown, to use it as the means of committing a
crime, to-wit: the crime of unlawfully possessing in-
toxicating liquor.''

Thereupon Hon. Ashby C. Dickson, Judge of that
court, before whom the affidavit was made, issued a
search-warrant for the premises described in the affi-
davit. The warrant was directed ''to any sheriff or
constable of Multnomah County.''

Mr. Pierce, on the trip to serve the warrant, was
accompanied by J. H. Beeman, A. C. Schirmer and
J. H. Talley, all of whom at the time were deputy
sheriffs of Multnomah County. Mr. Beeman, one of
the deputy sheriffs, had been engaged in prohibition
enforcement work for a number of years He knew
that the defendant had borne in the community for a
long time, the general reputation of being a manu-
facturer and seller of intoxicating liquor in viola-
tion of law. Through his experience as a prohibition
officer he had also acquired a knowledge of the smell
of mash, and was able to detect the presence of mash
by its odor. About ten days before this trip, he had
been out in the vicinity of the defendant's home in
company with Deputy Sheriff Schirmer and at that
time had smelt mash in the process of distillation in
the defendant's home.

The officer, in proceeding to inspect the manufac-
turing establishment, also occupied by defendant and
his wife as their home, smelt mash in the process of
distillation before they entered the house. They en-
tered the house and searched the same, and placed
Albert Quartier under arrest. They found therein
and on the premises one complete still of seventy-five

gallons capacity, the dome of another still, eleven full barrels of moonshine whisky, two sacks containing bottled moonshine whisky in pints, a number of empty bottles, and twenty mash barrels that had recently been emptied, with the dregs of mash in the process of distillation in each barrel.

Officer Beeman, upon the trial, over the objection of defendant, testified in part as follows:

"A. I found in the basement, in the southeast corner of the basement a fifty-gallon still set up on a stove without the top; there were twenty odd mash barrels, fifty gallon mash barrels; most of them containing a small portion of mash, mash on the edges and side, what we call dregs of mash in the bottom, from which I drained several of them enough to get a good sample of the mash."

The witness Beeman further testified on his direct examination that outside in the yard he and the other officers found, buried in a trench, fifty gallons of whisky contained in sacks, pint bottles in sacks, ten five-gallon kegs, and in a pile of straw the top of the still that was found in the basement, and a condenser, two separate parts, making a complete still, and that the defendant, after these articles were found, stated that he had buried the whisky there and worked continually for a certain number of hours in dumping the mash. These articles were identified by the witness and introduced in evidence over the objection of defendant.

The defendant made timely application, both before the District Court and before the Circuit Court, for the suppression of the evidence seized under the search-warrant, and for the return of so much of said property as might be lawfully possessed by him, and for the destruction of the remainder thereof, on the ground that the search-warrant was void and of no

legal force, and that said property was seized in violation of the rights of defendant, and of the Constitution of the State of Oregon.　　　AFFIRMED.

For appellant there was a brief and oral arguments by *Mr. Austin Flegel, Jr.,* and *Mr. Hall S. Lusk.*

For respondent there was a brief over the names of *Mr. Stanley Myers,* District Attorney, *Mr. Leon W. Behrman* and *Mr. George Mowry,* Deputies District Attorney, with oral arguments by *Mr. Behrman* and *Mr. Mowry.*

BEAN, J.—It is contended by counsel for defendant that the search-warrant was void because the affidavit on which it was based was insufficient, in that it failed to state facts as required by Section 1854, Or. L., and by Article I, Section 9, of the Constitution of Oregon, from which the magistrate could make his findings of probable cause. It is further claimed by defendant that the search-warrant was void for the reason that no deposition in writing was taken by the magistrate or subscribed to by the complainant or witnesses in his behalf as required by Section 1855, Or. L. It is also contended by the defendant that the search and seizure was unlawful, in that the search-warrant was not executed by the officers to whom it was directed.

The trial court held the search-warrant to be void but denied the prayer of defendant's petition to suppress the evidence obtained by virtue of the search-warrant, and received such evidence over the objection of defendant.

The principal questions involved upon this appeal concern the construction of the statute of this state

relative to the issuance of a search-warrant in connection with Article I, Section 9, of our Constitution, which reads as follows:

"No law shall violate the right of the people to be secure in their persons, houses, papers and effects, against unreasonable search or seizure; and no warrant shall issue but upon probable cause, supported by oath or affirmation and particularly describing the place to be searched, and the person or thing to be seized."

By Section 1852, Or. L., a magistrate authorized to issue a warrant of arrest has authority to issue a search-warrant, directed to a peace officer, commanding him to search for personal property at any place within his county, and bring it before the magistrate. Section 1853, Or. L., provides among the grounds upon which a search-warrant may be issued as follows:

"(3) When the property is in the possession of any person, with the intent to use it as the means of committing a crime, or in the possession of another to whom he may have delivered it, for the purpose of concealing it or preventing its being discovered, in which case it may be taken on the warrant from the possession of such person, or of the person to whom he may have so delivered it, or from any house or other place occupied by them or under their control, or either of them."

Section 1854, Or. L., reads as follows:

"A search-warrant cannot be issued but upon probable cause, shown by affidavit, naming or describing the person, and describing the property and the place to be searched."

And Section 1855, Or. L., requires that:

"The magistrate must, before issuing the warrant, examine, on oath, the complainant and any witnesses he may produce, and take their depositions in writing,

and cause them to be subscribed by the parties making them."

1. By Section 1856, Or. L., if the magistrate is satisfied that there is probable cause to believe in the existence of the grounds of the application, he must issue the warrant, the form of which is provided in that section.

Under the provisions of Article I, Section 9, of the Oregon Constitution, and of Section 1854, Or. L., as well, of the Fourth Amendment to the federal Constitution (where the actions of federal officers are involved), a search-warrant for the search of a person's house cannot lawfully be issued, unless it is based upon an affidavit stating facts from which the magistrate can make a finding that there is probable cause to believe that the law has been violated, and that the issuance of the warrant is justified. An affidavit on information and belief is not sufficient; nor is an affidavit sufficient which merely alleges the legal conclusions of the affiant: *United States* v. *Pitotto,* 267 Fed. 603; *Ripper* v. *United States,* 178 Fed. 24, 26 (101 C. C. A. 152); *State* v. *Peterson,* 27 Wyo. 185 (194 Pac. 342, 13 A. L. R. 1284); *Giles* v. *United States,* 284 Fed. 208; *United States* v. *Kaplan,* 286 Fed. 963; *Atlantic Food Products Co.* v. *McClure,* 288 Fed. 982; *Smith* v. *McDuffee,* 72 Or. 276, 284 (142 Pac. 558, 143 Pac. 929, Ann. Cas. 1916D, 947).

The affidavit in the present case specifically names the person and describes the property and the place to be searched. The question raised is purely whether the affidavit shows probable cause for the issuance of the warrant. Pursuant to Section 1855, Or. L., the officiating magistrate, before issuing the warrant, examined on oath the complainant, L. R. M. Pierce, and reduced his affidavit to writing, which was subscribed

and sworn to by the affiant. It is contended in effect, on behalf of defendant, that the affidavit states a conclusion of law, and left nothing for the magistrate to determine as to whether there was probable cause to believe that the grounds of the application existed. In addition to designating the defendant and the place to be searched, it is plainly stated in the affidavit that there is in the possession of the defendant in a certain building, which is named, "a still, worm, wort or mash and certain intoxicating liquor," with the intent of the defendant to use it as a means of committing a crime.

2. One cannot fail to see that the fact of the possession of the still and intoxicating liquor by defendant is plainly stated in the affidavit. The affiant did not state whether there was probable cause for the issuance of the warrant, that was left for the determination of the magistrate. Probable cause is a mixed question of law and fact. Whether the circumstances alleged to show it, probable or not probable, existed is a matter of fact; but whether, supposing them true, they amount to probable cause is a question of law: *Miller* v. *Brown,* 3 Mo. 127 (23 Am. Dec. 693).

3. The crux of the contention, made on behalf of defendant, is that the evidence of the possession of the contraband property is not detailed in the affidavit and that no deposition of witnesses was taken by the magistrate. The distinction between an affidavit and a deposition is that the latter is taken with notice to the adverse party for the purpose of enabling him to attend and cross-examine, while the former is taken without such notice, each being a written declaration under oath: Or. L., §§ 826, 827; *State* v. *Woolridge,* 45 Or, 389, 399 (78 Pac. 333); 2 C. J. 318, § 2, note 8 (a). The distinction between a deposi-

tion and an affidavit, as defined by the Code, is simply for the purpose of preserving the right of cross-examination: 2 C. J. 318, note 9 (a); *In re Liter*, 19 Mont. 474 (48 Pac. 753). The allegation of an affidavit should be full, certain and exact and must state facts positively and not merely upon information and belief.

4. The true test of the sufficiency of an affidavit is whether it has been drawn in such a manner that perjury could be charged thereon, if any material allegation contained therein is false: 1 R. C. L. 771, § 15.

It would be purging the statute of its meaning to deem it to require a notice to the adverse party of the taking of the written declaration under oath for the purpose of showing probable cause for the issuance of a search-warrant. In common parlance the terms "affidavit" and "deposition" are often used synonymously, notwithstanding the well-defined distinction between them: 1 R. C. L. 761, § 2.

In Section 4 of Chapter 180, Gen. L. of Or. 1923, which authorizes actions in the name of the United States to abate and enjoin nuisances, as defined in the act of Congress of October 28, 1919, known as the National Prohibition Act, to be brought and tried in the Circuit Courts of the State of Oregon, in enacting a provision for the issuance of a search-warrant and requiring that probable cause be shown and directing that the magistrate, upon certain conditions, issue a search-warrant, we find the following language: "The particular grounds or probable cause for its issue and the names of the persons whose *affidavits* have been taken in support thereof." The word "affidavits" is evidently used in the same sense as the word "depositions" employed in Section 1855, Or. L.

Section 1866, Or. L., directing the return of the magistrate to the court having jurisdiction of the crime in respect to which the search-warrant was issued, requires the magistrate to ''annex together the depositions, the search-warrant and return.''

It is clear that the legislature never intended that the adverse party should have notice of the taking of such an affidavit or ''deposition'' and the framer of the law must have used the words ''affidavit'' and ''deposition'' interchangeably. Definitions do not aid us in solving the question. We must simply look to the declaration of facts, under oath, to determine the sufficiency of the allegation. The statute, by its terms, does not in all cases require the affidavit or ''deposition'' of witnesses other than the complainant. This might be requisite in a case when the complainant could not make oath as to all of the facts essential to establish probable cause, and other witnesses had knowledge of such additional facts.

The affidavit of such other witnesses may be referred to as depositions, but in reality they are only affidavits, and not depositions within the meaning of Sections 826 and 827 of Or. L. Section 1855, Or. L., relative to the examination of complainant and witnesses before a search-warrant issues, is very similar to Section 1736, Or. L., relative to the examinations of an informant and his witnesses before a warrant of arrest issues. Section 1736, Or. L., is as follows:

''When complaint is made to a magistrate of the commission of a crime, he must examine the informant on oath, and reduce his statement to writing, and cause the same to be subscribed by him, and also take the depositions of any witnesses that the informant may produce in support thereof.''

In *State v. Peterson*, 27 Wyo. 185 (194 Pac. 342, 13 A. L. R. 1284), at page 1289 of the latter volume, this language is recorded:

"The same provision of the Constitution protects against unreasonable arrest and search-warrant for property, and the interpretation placed thereon as to the character of the affidavit in case of arrest of the person applies equally as to search and seizure of goods."

It has never been the practice in this state to require the depositions of witnesses in addition to the sworn statement of an informant as a prerequisite to the issuance of a warrant of arrest. We can conceive of no good reason why such a practice should be required in the case of the issuance of a search-warrant.

If the defendant was in possession of a still, worm, wort or mash and intoxicating liquor, in a certain described building in the City of Portland, Multnomah County, Oregon, on the thirty-first day of March, 1924, in violation of law, as definitely stated in the affidavit made before the magistrate (and it might be added that subsequent developments proved the statement to be true), how could such magistrate find therefrom otherwise than that there was probable cause to believe in the existence of the grounds of the application? How could that official perform his duty in any manner except by issuing a search-warrant in compliance with the application?

One's residence is no more sacred than one's person; the security of each is protected by the same provision of the Bill of Rights, namely, Article I, Section 9 of the Constitution of the State of Oregon, prescribing that no law shall violate the right of the people to be secure in their persons, houses, papers and effects against unreasonable

search or seizure, and that no warrant shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the person or thing to be seized: *State v. Gugliemo*, 46 Or. 250, 265 (79 Pac. 577, 80 Pac. 103, 7 Ann. Cas. 976, 69 L. R. A. 466); *Sprigg v. Stump*, 8 Fed. 207, 213. In the latter case, Judge DEADY of the federal court said:

"Undoubtedly, then, the legal effect of this provision of the constitution is that process of any kind for the arrest of a person upon a criminal charge is void, unless issued upon sufficient information under oath, and an arrest thereon is unlawful."

It follows that the same degree of certainty, definiteness, positiveness and particularity, which, when contained in an indictment or a criminal information or complaint, is sufficent to justify the arrest of one's person, will, when found in an affidavit for a search-warrant, likewise be sufficient to justify the issue of a warrant for the search of one's premises. There is some similarity between an affidavit for a search-warrant, alleging that property is in the possession of a person with the intent to use it as the means of committing a crime, and an indictment under Section 1941, Or. L., for the crime of burglary, namely, for breaking or entering a dwelling-house in the night-time, in which there is at the time some human being, with intent to commit a crime therein. The form for an indictment for burglary is form No. 13 in Vol. I, Or. L., p. 1347, and is as follows:

"Broke and entered in the night-time, a dwelling-house, in which there was at the time a human being, namely, one C. D. (or whose name is unknown to the grand jury, as the case may be), with intent to commit larceny (or other crime, describing it generally) therein, by forcibly bursting or breaking the

wall (or an outer door, or a window, or a shutter of a window) of such house (as the case may be)."

5. The affidavit in the present case is as definite and as pregnant with facts as an indictment for receiving stolen goods: See general form for which in 1 McClain on Criminal Law, § 727, p. 720. The affidavit in question contains a concrete statement of facts and does not consist of conclusions of law. It conforms to the requirements of our statute and Constitution. Under the statute and Constitution and facts disclosed by the affidavit, the search and seizure in this case cannot be said to be unreasonable. The search and seizure were valid.

The able brief of the learned counsel for defendant upon this question is grounded, in the main, upon cases like the following, which we will notice, or upon cases where the affidavit was faulty and consisted chiefly of legal conclusions and were vastly different from that of the case at bar. In the case of *Giles* v. *United States,* 284 Fed. 208, 212, a search-warrant was issued on the basis of an affidavit, the material part of which read as follows:

"that the laws of the United States, namely, the National Prohibition Act, is being violated by reason of the facts, to wit: By the illegal possession and unlawful sale of intoxicating liquor at the drug store of D. F. Giles, on North Main street, Concord, New Hampshire, and the Hotel Lenox, occupied by the said D. F. Giles, on said North Main street, Concord, New Hampshire,"

The search-warrant, based upon this affidavit, was held to be bad. The provisions of the federal law, being a part of the Espionage Act, 40 Stat. 228, governing the issuance of the search-warrant in this case, set forth in full in the opinion, contain, among other, the following requirements:

"Sec. 3. A search warrant cannot be issued but upon probable cause, supported by affidavit, naming or describing the place and particularly describing the property and place to be searched.

"Sec. 4. The judge or commissioner must, before issuing the warrant, examine on oath the complainant and any witness he may produce, and require their affidavits or take their depositions in writing and cause them to be subscribed by the parties making them.

"Sec. 5. The affidavits or depositions must set forth the facts tending to establish the grounds of the application or probable cause for believing that they exist."

It was held under this statute that "it should have affirmatively appeared that he had personal knowledge of facts competent for a jury to consider, and the facts, and not his conclusions from the facts, should have been before the commissioner," under Section 5 of the act.

Passing the declaration in the affidavit as to the legal conclusions, it will be noticed that the first two paragraphs above quoted of the Espionage Act are practically identical with our statute, which conforms to our Constitution, Art. I, § 9.

The third paragraph of the Espionage Act, above quoted, contains a requirement not found in the statute or Constitution of this state. Several of the federal cases, like the one here noted, hold in effect that this statute requires the affidavit for a search-warrant to state evidence or facts in detail. In order to give the latter paragraph its proper meaning, no other conclusion could be reached. The other federal cases cited are practically to the same effect. We are not, however, warranted in inserting such a requirement as contained in the third paragraph quoted, in our statute or Constitution. Under the

mandate of Article I, Section 9, we think it is competent for the lawmakers of this state to provide for the manner of the procedure for the issuance of search-warrants and the proceedings thereon. In conformity with the Constitution, such provisions are made in Chapter XXIV of Title XVIII of our Code, part of which we have quoted above and referred to.

6. There is, we think, an additional reason why the search and seizure in this case were legal, and why the judgment of conviction should be affirmed. Section 1371, Or. L., provides that a felony is a crime which is punishable with death or by imprisonment in the penitentiary. By the provision of Section 13, Chapter 30, General Laws of Oregon 1923, the maximum penality for unlawfully possessing a still is fixed at imprisonment in the state penitentiary. Section 1763, Or. L., provides that a peace officer may, without a warrant, arrest a person, (1) For a crime committed or attempted in his presence. (2) When the person arrested has committed a felony although not in his presence. (3) When a felony has in fact been committed and he has reasonable cause for believing the person arrested to have committed it: Section 1763, Or. L.; *State* v. *Laundy,* 103 Or. 443, (204 Pac. 958, 206 Pac. 290); *State* v. *Goldstein,* 111 Or. 224 (224 Pac. 1089); *State* v. *McDaniel* (Or.), 231 Pac. 965; *Angello* v. *United States,* 290 Fed. 671; *United States* v. *Chin On,* 297 Fed. 531; *United States* v. *McBride,* 284 Fed. 416; *United States* v. *Mills,* 185 Fed. 318; *Vachina* v. *United States,* 283 Fed. 35; *United States* v. *Vatune,* 292 Fed. 497.

7. In order for a crime to be committed in the presence of an officer, it is not necessary that he should see it committed, but it is committed in his presence within the meaning of the statute, when-

ever any of his powers of observation, whether of sight, hearing or smell, indicate to him that the crime is being committed: *State* v. *McDaniel* (Or.), 231 Pac. 965; *United States* v. *Chin On,* 297 Fed. 531; *United States* v. *McBride,* 284 Fed. 416; *Ex parte Morrill,* 35 Fed. 261.

In the present case, it is shown by the testimony of Deputy Sheriff Beeman that through his experience as a prohibition officer he had acquired the ability to detect by its odor the presence of mash in process of distillation; that ten days before the arrest of defendant he was in the immediate vicinity of the premises in question and detected the odor of mash in process of distillation coming out of the house. It is further shown that on the day of the arrest, before he entered the house, he again detected the odor of mash in process of distillation emanating from the house. It was also shown that Beeman was well acquainted with the general reputation of the defendant in the community as being engaged in the unlawful manufacture of whisky. From these facts it clearly appears that Beeman, one of the deputy sheriffs, at the time he entered the house knew that the felony of unlawfully possessing mash and a still was then being committed within the house and that the defendant occupied the house, and has reasonable cause for believing that a felony was then being committed within the house by the defendant.

Therefore, by virtue of Section 1763, Or. L., the deputy sheriff was authorized to arrest the defendant for this felony without a warrant, and according to the provisions of Section 1764, Or. L., he had the right in making the arrest to enter the house. In the case of *State* v. *Laundy,* 103 Or. 443, 495 (204

114 Or.—43

Pac. 958, 206 Pac. 290), Mr. Justice HARRIS records the following language:

"Section 3 of Chapter 13, Laws of 1919, declares that a person who does any of the acts prohibited by that section 'is guilty of a felony.' The arrest was therefore made lawfully, and consequently the policemen had a right to do whatever they could have done if they had held a warrant of arrest: *Smith* v. *State,* 3 Ga. App. 326 (59 S. E. 934); *Jenkins* v. *State,* 4 Ga. App. 859 (62 S. E. 574). See also *State* v. *Hassan,* 149 Iowa, 518, 524 (128 N. W. 960)."

8. Furthermore, the evidence in the present case above referred to showed that, outside of the building authorized to be searched, and on the premises of defendant, the officer found a large quantity of intoxicating liquor hid in a trench, and a portion of a still in a pile of straw, and also mash, all of which admittedly belonged to defendant and which clearly indicated that the defendant maintained and operated an illicit still. If there had been no contraband goods taken from the house under the search-warrant offered in evidence, the other evidence was sufficient to preclude the court from granting defendant's motion for a directed verdict of acquittal and to amply sustain the verdict of guilty: Section 3 (c), Art. VII, Const. Oregon.

9. The contention that the search-warrant was not executed by the officers to whom it was directed cannot be maintained in view of the fact that there were three deputy sheriffs of Multnomah County engaged in the execution of the warrant. It is immaterial who assisted them, and we are not now concerned with the return on the warrant.

We find no prejudicial error in the record. The judgment of the lower court is affirmed.

AFFIRMED.