Argued January 26, affirmed February 23, 1927.

## STATE *v.* LESLIE LEE.

(253 Pac. 533.)

Searches and Seizures—Reasonableness of Search or Seizure is not Determined by Presence or Absence of Warrant, but is Judicial Question to be Determined Under Circumstances (Const., Art. I, § 9).

1. Reasonableness of search or seizure, within Constitution, Article I, Section 9, is not determined by the presence or absence of a warrant therefor, but is a judicial question to be determined in each case, in view of the place searched, the thing seized, and the circumstances of the search and seizure, and the presence or absence of probable cause therefor.

Intoxicating Liquors—Illicit Mash, Stills and Intoxicating Liquor are not Subject to Ownership.

2. Illicit mash, stills and intoxicating liquor are contraband, and no person can hold title or ownership in them.

Searches and Seizures—Search and Seizure Without Warrant in Defendant's Absence of Illicit Mash, Still and Liquor Discovered by Sheriff by Smell in Building not Used for any Domestic Purpose Held not Unreasonable—"Dwelling"—"Dwelling-house"—"Curtilage" (Const., Art. I, § 9).

3. Search and seizure without warrant in defendant's absence of illicit mash, wort, wash, still and liquor *held* not violative of Constitution, Article I, Section 9, securing people in their persons, houses, papers and effects against unreasonable searches or seizures, where sheriff discovered the contraband goods by sense of smell, and building containing them was not used for any domestic purpose, but solely as a distillery building, "dwelling" or "dwelling-house," including all of the cluster of buildings convenient for the occupants of the premises generally described as within the curtilage; the "curtilage" being the ground adjoining the dwelling-house used in connection therewith for family purposes, usually including the buildings occupied in connection therewith.

Intoxicating Liquors—Violation of Prohibition Law in Officer's Presence is Necessary to Justify Seizure Without Warrant of Illicit Still, Mash and Liquor.

4. To justify seizure of illicit still, mash, wort, wash and liquor without a warrant, it must appear that there was a violation of the prohibition law in the presence of the officer.

Searches and Seizures—Officer can Act on Information Secured Through Senses for Purpose of Making Search and Seizure Without Warrant for Violation of Law in His Presence.

5. For purpose of making a search and seizure for violation of law in his presence without a warrant, an officer is authorized and is justified in acting on information secured by him through the use of his senses including sight and smell.

Searches and Seizures—State and Federal Prohibitions Against Unreasonable Searches and Seizures must be Construed According to Common Law (Const. Or., Art. I, § 9; Const. U. S. Amend. 4).

6. Both Const. Or., Article I, Section 9, and Const. U. S. Amend. 4, prohibiting unreasonable searches and seizures, are to be construed in conformity with the principles of the common law.

Arrest—At Common Law, Officers may Arrest Those Committing Crimes in Their Presence and Without Search-warrant Seize Instrument of Crime.

7. At common law, officers may arrest those who commit crimes in their presence, and may avert a crime, in the process

_____

3. Constitutional guaranty against unreasonable searches and seizures as applied to search for or seizure of intoxicating liquors, see notes in 41 A. L. R. 1539; 39 A. L. R. 811; 29 A. L. R. 709; 13 A. L. R. 1316; 3 A. L. R. 1514.

of commission by arrest, and without a search-warrant seize the instrument of the crime.

**Arrest—Officer, Making Arrest Without Warrant, Need not Absolutely Know That Offense is Being Committed, but must Believe Such from His Senses.**

8. An officer, who makes an arrest without a warrant for the commission of a crime in his presence, need not absolutely know that an offense is being committed, but he must believe that it is being committed and must so believe on the evidence of his senses.

**Searches and Seizures—Search may be Made Without Warrant for Commission of Crime in Presence of Officer, Though Defendant is not Present.**

9. Justification of search without warrant on the ground that a crime is being committed in the presence of an officer does not require that defendant be present.

Arrest, 5 C. J., p. 398, n. 68, p. 399, n. 75, 78.
Constitutional Law, 12 C. J., p. 718, n. 16 New.
Curtilage, 17 C. J., p. 437, n. 3, p. 438, n. 5, 11, 26.
Intoxicating Liquors, 33 C. J., p. 679, n. 44, 54.

From Washington: GEORGE R. BAGLEY, Judge.

Department 2.

The defendant was indicted, tried and convicted of the crime of having in his possession mash, wort and wash fit for distillation, or for the manufacture of intoxicating liquors. From a judgment of sentence defendant appeals.

A search-warrant was secured by the sheriff of Washington County upon affidavit, to authorize the search of the premises known as the Elizabeth Lee place, occupied by James Lee. The premises consisted of several acres of land. Pursuant to the search-warrant the sheriff and his deputies proceeded to search the house and outbuildings of James Lee, where they found a quantity of moonshine and mash. After the search of the James Lee place, they went into the barnyard where the sheriff smelled mash.

7. See 2 R. C. L. 446.
8. See 2 R. C. L. 450.

The sheriff proceeded along the automobile tracks leading toward the barn of Leslie Lee, the defendant, about 850 feet from the house of James Lee, the barn of Leslie Lee being·approximately 350 feet from the barn on the premises of James Lee. The nearer he approached the Leslie Lee premises the stronger and more pronounced the odor became. Arriving at the barn of Leslie Lee the odor of mash was extremely strong .and pronounced. The barn was locked, and upon going to the residence occupied by Leslie Lee, no one was found at home. Returning and passing the Leslie Lee hog-pen, the sheriff discovered mash thrown into the hog-pen. Retracing his steps from there to the barn he again found the fumes of mash distinctly noticeable. The sheriff entered the barn by displacing the board which covered a manure hole and then unfastened the barn door from the inside, and his assistants entered this structure, or so-called barn. In a pen which was entirely inclosed and lined with heavy paper a complete still was set up ready for operation with a capacity of 100 gallons, including the pressure burners, and a huge vat filled with water for cooling and condensing purposes. In the upper story of the building, which had once been a hay-loft, was found a tent, put up and inclosed. Inside of this tent were six vats, each of the capacity of 100 gallons, and containing corn mash. In this tent was a coal-oil stove with fire burning for the purpose of keeping the mash at the proper temperature for fermentation purposes. Some of the mash was still going through the process of fermentation. A portion of it was ready to run through the distillery. All of the mash was fit for distillation. There was found upon the premises a quantity of finished moonshine. There was also found some old mash and fixtures, appliances

and apparatus used for the purpose of making and selling moonshine.

One of the deputies was left to watch for the defendant and arrest him upon his return. This deputy arrested defendant on the road to his home, and in his vehicle at the time were supplies to be used in making moonshine. The defendant admitted to the officers that the still that they had found in his barn was his still; that the mash and moonshine found were his, and also admitted that all of the mash and moonshine found on the James Lee premises was his. He admitted that all of the moonshine apparatus and appliances found by the sheriff on the premises occupied by him was his, and that the building where they were found was upon the premises occupied and controlled by him under a lease from one Jennie Lee. The premises occupied by the defendant consisted of about one and one-half acres of ground.

After the search and before the trial, to wit, on November 24, 1925, the defendant filed in the Circuit Court a petition, praying that all of the evidence in regard to matters and things obtained, with respect to the search and seizure, be suppressed for the reason that the sheriff did not have a search-warrant for the search of his premises and that said search was in violation of Section 9, Article I of the Constitution of the State of Oregon. After a hearing and the taking of the testimony upon the application, the Circuit Court denied the same.          AFFIRMED.

For appellant there was a brief over the name of *Messrs. Hare, McAlear & Peters,* with an oral argument by *Mr. R. F. Peters.*

For respondent there was a brief and oral argument by *Mr. E. B. Tongue.*

BEAN, J.—1-3. The defendant contends that the building where the mash, wort and wash were found was within the curtilage of his dwelling-house, and that the search thereof could not be regularly made without a warrant. It is contended on behalf of the state as follows:

"1. This search was legal because the officer followed his nose and located mash then fermenting and a crime was then being committed in his presence.

"2. That section 9, Art. I of the Constitution has no application to intoxicating liquor, mash, wort, wash or stills, because such are contraband in which there can vest no title and are not property, papers, houses or effects within the meaning of that section of the constitution, because in searching for liquor, mash or stills the officer has not searched or seized property, papers or effects of the defendant."

The character of the premises is relevant only in determining the validity or the invalidity of the search and seizure. Premises other than dwellings have been held within the protection of the Fourth Amendment for example a barn. As construed by the courts from the earliest to the latest times the words "dwelling" or "dwelling-house" have been construed to include not only the main but all of the cluster of buildings convenient for the occupants of the premises, generally described as within the curtilage: McFadden on Prohibition, p. 214. A barn is sometimes held to be within the curtilage.

It will be noticed from the statement in the present case that there is no indication that the building or barn in which the mash, wort, wash and still and liquor were found was in any way used for domestic purposes in connection with the dwelling-house of the defendant, but that while it was once used as a barn,

the present purpose to which the building was put was as a distillery. Generally speaking, the curtilage is the space of ground adjoining the dwelling-house, used in connection therewith in the conduct of family affairs and for carrying on domestic purposes usually including the buildings occupied in connection with the dwelling-house. It is the propinquity to a dwelling, and the use in connection with it for family purposes which is to be regarded: 17 C. J. 437, 438.

The question in regard to the search of a dwelling-house is not in this case. Article I, Section 9 of the Constitution of Oregon provides that "no law shall violate the right of the people to be secure in their persons, houses, papers and effects against unreasonable search or seizure * * ".

The Supreme Court of Mississippi, in the case of *Moore* v. *State,* 138 Miss. 116 (103 South. 485) (see Cornelius, Search & Seizure, p. 179), adopting the reasoning applied in the case of *Carroll* v. *United States,* 267 U. S. 132 (69 L. Ed. 348, 45 Sup. Ct. Rep. 280, 39 A. L. R. 790), used the following language:

"It thus appears that the reasonableness of a search or seizure is not determined either at common law or under our statutes by the presence or absence of a warrant therefor. It is a judicial question to be determined by the court in each case, taking into consideration the place searched, the thing seized, the purpose for, and the circumstances under which the search or seizure was made, and the presence or absence of probable cause therefor."

There is no intimation in the present case that the building described as a "barn" was used for any family or domestic purpose, but solely as a distillery building for housing a still and storing articles and products necessary for the manufacture and sale of intoxicating liquors. Illicit mash, stills and intoxicat-

ing liquor are contraband. No person can hold title
or ownership therein. The Constitution invoked in
this case is not applicable to searches and seizures of
contraband goods situated and found by an officer in
the manner described herein: *State* v. *Pluth,* 157
Minn. 145 (195 N. W. 789); *City of Sioux Falls* v.
*Walser,* 45 S. D. 417 (187 N. W. 821); *United States*
v. *Lindsly,* 7 Fed. (2d) 247.

4. To justify seizure of property without a warrant
in a case like this it must appear that there was a
violation of the prohibition law in the presence of the
officer: *United States* v. *Giovanetti,* 6 Alaska, 454;
*State* v. *Rouleau,* 68 Mont. 529 (219 Pac. 1096); *Stan-
ley* v. *State,* 82 Okl. 294 (200 Pac. 229); *Ashbrook* v.
*State,* 92 Okl. 287 (219 Pac. 347); Blakemore on Pro-
hibition (2 ed.), 458, § 120.

5. For the purpose of determining whether or not
an officer is justified in making a search and seizure,
like the one in question, without a warrant, the officer
is authorized and justified in acting upon the informa-
tion he secures through the use of his senses of sight
and smell, etc.: *State* v. *McDaniel,* 115 Or. 187, 238 (231
Pac. 965, 237 Pac. 373); *McBride* v. *United States,*
284 Fed. 416; *State* v. *McAfee,* 107 N. C. 812 (12 S. E.
435, 10 L. R. A. 607); *State* v. *Quartier,* 114 Or. 657
(236 Pac. 746, 751); *United States* v. *Boyd,* 1 Fed.
(2d) 1019.

6, 7. The Constitutions, both state and federal, which
prohibit unreasonable searches and seizures, are
to be construed in conformity with the principles of
the common law. At common law officers may arrest
those who commit crimes in their presence, and may
avert a crime in the process of commission in their
presence by arrest, and without a search-warrant may
seize the instrument of the crime: *Garske* v. *United
States,* 1 Fed. (2d) 620, 624; *State* v. *McDaniel,* 115

Or. 238 (231 Pac. 965, 237 Pac. 373); *United States* v. *Snyder,* 278 Fed. 652; *State* v. *Quartier,* 114 Or. 657 (236 Pac. 746).

8. It is not essential in making an arrest without a warrant that the officer must absolutely know that an offense is being committed. He must believe it is being committed and must so believe upon the evidence of his own senses: *United States* v. *Rembert,* 284 Fed. 1001. Where two prohibition agents entered the premises where no one was living and when within about three hundred yards of the barn they detected the odor of mash and proceeding to the barn found stills in operation, the search was held not an unreasonable one and not unlawful because of the lack of a warrant: *Tritico* v. *United States,* 4 Fed. (2d) 664. See, also, *Huff* v. *United States,* 1 Fed. (2d) 493.

9. In order to justify a search without a warrant upon the ground that a crime is committed in the presence of an officer it is not necessary that the defendant be present: *Huff* v. *United States,* 1 Fed. (2d) 493; *United States* v. *Lindsly,* 7 Fed. (2d) 247. See, also, dissenting opinion in *Temperani* v. *United States,* 299 Fed. 365, 370; *State* v. *District Court,* 9th Dist., 72 Mont. 77 (231 Pac. 1107).

We are unable to find from the record that the search and seizure in the case at bar was unreasonable. The evidence sought to be suppressed was admissible. Apart from the finding of articles on the defendant's premises, he admitted his guilt of the crime charged by claiming the mash and liquor found on his father's place.

Finding no error in the record, the judgment is affirmed. AFFIRMED.

BURNETT, C. J., and BROWN and COSHOW, JJ., concur.