Argued October 22, 1930; affirmed February 17, 1931

## STATE *v.* DUFFY ET AL.
### (295 P. 953)

*Paul M. Long* and *Frank E. Swope,* both of Portland, for appellants.

*Cleo W. Kirk,* of Portland (Stanley Myers of Portland, on the brief) for the state.

ROSSMAN, J. A brief review of the proceedings had in the circuit court is necessary as a prelude to a consideration of the assignments of error. We shall first review the testimony adduced upon the motion to suppress the evidence. Four peace officers had information that a distillery was in operation in a house located on Council Crest drive, which is a street in a residential section of Portland known as Portland Heights; their information, however, did not mention any particular house. Having this information the officers drove to Council Crest drive, and when they were approximately half a block distant from No. 993, being the premises in question, they detected an odor of what they described as "mash cooking." Due to the contour of the land, or the irregular direction of the streets, the officers were able to approach very close to the rear of the above described house without leaving the public streets, and there became satisfied

that the odors which reached them were produced by the operation of a still in that house. They described these odors as "a very strong odor of mash smell * * * We also got, later on, an odor of fumes from the still * * *. As we got up to the house we got an odor of coal oil smell * * *." The evidence does not indicate whether there were any other houses in the vicinity of No. 993 Council Crest drive. Having become satisfied that in the house just mentioned a distillery was in operation two of the officers went to the rear door and rapped, while the other two remained in the street in front of the premises. Presently the defendant, Mrs. Gephart, opened the door. The officer who had rapped on the door testified:

"She recognized me and I told her that we wanted in and she opened the door and we went in.

"Q. You say she recognized you?

"A. Yes.

"Q. Did you tell her that you were an officer?

"A. She knew me.

"Q. She knew you? Did she ask you whether you had any authority to enter?

"A. She opened the door and we got inside, and she asked me if I had a search warrant, and I told her we didn't need any."

Having entered, the officer at once noticed that the odors which he had detected came from upstairs, and went there while the other remained with Mrs. Gephart. The second story of the house was unfurnished; but in one of its rooms the officer found a still of about 225 gallons capacity which was producing whisky at the rate of five gallons every 20 minutes; also 1,200 gallons of mash, 180 gallons of whisky and "other stuff that was up there, coal oil and such as that." The appellant Duffy was in active charge of the still. He and Mrs. Gephart were at once arrested

and sent to the county jail. These events occurred at
4:00 p. m. Next the distillery was dismantled and the
mash was destroyed. At about 8:15 in the evening an
automobile approached the house upon a private drive-
way and stopped after having entered upon the
premises. When two of the officers approached the
car its occupants immediately endeavored to drive
away by backing into the street. Their haste was so
great that one of the officers, who was to the rear of
the car, was almost run over. When the car stopped
the occupants were arrested and searched. Whether
the search preceded the arrest or followed it was not
made clear at the time when the testimony was taken
upon the motion to suppress the evidence. The offi-
cers, in explanation of the arrest and search of the
two occupants, who were the appellant Knox and a
Mr. Elkins, testified that a felony had been committed
in the house and "that they drove into the place and
stopped and when we went out to talk to them they
attempted to get away." In Knox's pockets was found
a number of papers, and in the automobile was dis-
covered two copper "baffle plates" which were extra
parts for the distillery. Upon experiment it was dis-
covered that these baffle plates fitted into their proper
place in the still perfectly. More clothing was found
in the house than was useful for Duffy, and the officers
believed that some of this was of an appropriate size
for Knox. The appellants, in support of their motion,
contented themselves with an account of their connec-
tion with the above premises as is narrated in two
documents, which possibly can be regarded as affi-
davits. These writings are somewhat barren of details;
each is verified by one of the appellants. The one,
which is supported by Duffy's oath, is predicated upon
the recital: "Said officers saw no crime committed

in their presence prior to said search and seizure and had no probable cause to believe that defendant prior to such entry had committed any crime." The affidavit of Knox confines itself to the circumstances attendant upon his arrest. It avers that the search of his person preceded his arrest, and states facts which probably warrant an inference that his attempt at flight was occasioned by a fear lest the officers were highwaymen. His statement denies that he had committed any crime and avers that he had no connections whatever with the premises at No. 993 Council Crest drive. Both motions were overruled and upon the trial all the aforementioned testimony was repeated, amplified somewhat by attendant details. All four officers testified to an extended experience with the enforcement of the prohibition laws and described their familiarity with the operation of distilleries; they added that the odor eminating from the house was caused by mash which was being prepared for distillation and from a still in active operation. This testimony met with no denial except Knox's testimony that when he approached the house he detected no odors. However, his car was an enclosed one, and at that time the distillation had stopped. It also developed upon the trial that before the officers entered the house they informed Mrs. Gephart that they were peace officers, and that when they approached Knox's automobile one of them displayed his star by holding it in such a manner that the lights of the automobile shone upon it. At the trial it further appeared that a large number of papers, consisting principally of receipts for money, was found in the house bearing the name of J. L. Morgan. These receipts covered items paid for rent, electrical power, telephone service, gas, groceries, etc. The state's evidence indicated that when

Knox was arrested he stated that his name was Morgan, and there was found upon him papers similar to those found in the house also containing the name of Morgan. Another paper found upon Knox was an invoice sheet upon the bill head of the Pacific Metal company for items amounting to $23.17 consisting of bar solder, copper rivets and sheet copper; it bore the name of J. S. Clement. Immediately following his arrest Knox made several statements wherein he revealed familiarity with this still and the operations which were being conducted at the above premises. These admissions could readily have prompted the conclusion that he was the proprietor of the establishment at 993 Council Crest drive. Knox denied that he had made these admissions and testified that he had no connections whatever with the above premises and the unlawful operations which were being conducted there. Duffy admitted that he was engaged in the operation of the still at the time of his arrest and testified that one by the name of J. L. Morgan had hired him to operate it for a wage of $10 per day. He stated that Knox was not Morgan.

■ The appellants insist that the circuit court erred when, preliminary to the trial, it denied their motions to suppress as evidence the still, whiskey, mash, baffle plates, written instruments, etc., and that it again erred when it received in evidence during the course of the trial these articles over their objections. It requires no argument to establish the relevancy of the still, whisky and mash. The baffle plates, having been taken from the automobile in which Knox was riding, likewise became relevant when it appeared that these plates fitted perfectly into the still. Knox asserted, at the time of his arrest and also at the trial, that Elkins, who was his fellow occupant of the automobile,

had no connections whatever with the still nor with the baffle plates; he vouched for Elkins' innocence. Hence the baffle plates were in Knox's possession. The relevancy of the papers bearing the name of Morgan, and found in the house, and also those discovered upon the person of Knox became apparent when it appeared that practically all of them bore the address "993 Council Crest drive" and the name Morgan, which is the alias adopted by Knox at the time of his arrest. The relevancy of the invoice for two sheets of copper, etc., found upon the person of Knox, became additionally evident when the two copper baffle plates were discovered in Knox's automobile. Hence all of the above evidence was relevant. There remains, therefore, for determination only the problem whether this evidence was properly obtained. This brings before us once more the troublesome problem of the effect of the 4th amendment to the Federal Constitution and article I, section 9, of the Oregon Constitution.

The importance of the problem before us can not be minimized. The security of the home is the ultimate objective of all government. Since the 4th amendment to the Federal Constitution and its similar provision in the Oregon Constitution (Art. I, § 9) were intended to protect the individual in the sanctity of his home and in the privacy of his books, papers and property from unwarranted intrusions of public officers these constitutional provisions have endeared themselves to the citizen. The judiciary, as well as the legislative branch of the government is charged with their enforcement.

The defendants assume that the establishment in question was a home, and urge that we deem it such. The second story of the house was barren of all personal property except the large still, stock of whiskey, quantity of mash, kegs, etc. The first story bore some

semblance to a home, yet no one testified that he actually resided there. We are fully prepared to agree with the holding in *United States v. Kelih,* 272 Fed. 484, that a private dwelling does not lose its character as such, and become a distillery, because a home-made still is found in operation therein. In that case the still was of small capacity, and the dwelling house was actually the abode of a family. The facts before us incline us to the belief that the premises at No. 993 Council Crest drive could be regarded more properly as a distillery, where the employees occasionally lodged, than as a home. Nevertheless we shall regard it as a home.

■ The problems before us, therefore, are: Were the articles of evidence, which constituted the subject-matter of the defendant's motion to suppress, seized in violation of the above-mentioned constitutional inhibitions. It is clear that if the officers entered the house for the purpose of making a search their acts were illegal. No citation of authorities is necessary to buttress that conclusion. However, the case of *DePater v. U. S.,* 34 Fed. (2d) 275, is instructive. We, therefore, pass on to a consideration of the problem: Can their entry into the house be sustained as an act which could be lawfully done by a peace officer for the purpose of arresting the occupants for a violation of the prohibition laws. When a lawful arrest has been made the arresting officer is justified in seizing the instrumentality with which the crime was committed, so that it may serve as evidence, and he may also take into his possession all contraband properties for the purpose of confiscation: *State v. Laundy,* 103 Or. 443 (204 P. 958, 206 P. 290) ; *State v. Quartier,* 114 Or. 657 (236 P. 746) ; *State v. McDaniel,* 115 Or. 187 (231 P. 965, 237 P. 373) ; *State v. De Ford,* 120 Or. 444 (250 P. 220). Hence if the officers entered, not for

the purpose of searching, but for the purpose of making an arrest, and if their act was justifiable as such, the seizure of the still and similar properties was lawful: § 13-2111, Oregon Code 1930, provides that an officer may, without a warrant, arrest a person (1) for a crime committed or attempted in his presence; (2) when the person arrested has committed a felony, although not in his presence; and (3) when a felony has in fact been committed and the officer has reasonable cause for believing the person arrested to have committed it. Section 15-131 provides that:

"All premises * * * where intoxicating liquors are manufactured, sold, * * * and all intoxicating liquors, bottles, * * * and other property kept in and used in maintaining such premises, * * * are hereby declared to be common nuisances * * * and every person who maintains or assists in maintaining such common nuisance shall be held guilty of a misdemeanor. * * *"

Section 15-502, Oregon Code 1930, provides:

"No mash, wort or wash fit for distillation * * * shall be made, fermented or possessed * * *"

Section 15-507, Oregon Code 1930, provides:

"No distillery shall be set up or operated in this state for the purpose of manufacturing intoxicating liquors, for beverage purposes, nor be used in the manufacture thereof. * * * Any person or persons violating any provisions of this section shall be deemed guilty of a felony."

■ It follows from the above provision of our laws that if a crime was being committed in the presence of the officers upon the above-described premises they had a right to enter for the purpose of arresting the guilty party. This court has subscribed to the doctrine that a crime may be committed in the presence of an

officer, even though his vision does not apprise him of that fact. In *State v. Quartier,* supra, Mr. Justice BEAN, referring to section 13-2111, stated:

"In order for a crime to be committed in the presence of an officer, it is not necessary that he should see it committed, but it is committed in his presence within the meaning of the statute, whenever any of his powers of observation, whether of sight, hearing or smell, indicate to him that the crime is being committed."

From *State v. Lee,* 120 Or. 643 (253 P. 533), we quote:

"To justify seizure of property without a warrant in a case like this, it must appear that there was a violation of the prohibition law in the presence of the officer [citation of authorities]. For the purpose of determining whether or not an officer is justified in making a search and seizure, like the one in question, without a warrant, the officer is authorized and justified in acting upon the information he secures through the use of his senses of sight and smell, etc. [Citing of authorities]."

See also Blakemore on Prohibition (3d Ed.) § 950, and McFadden on Prohibition, § 29.

In *State v. McDaniel,* 115 Or. 187 (231 P. 965, 237 P. 373), Mr. Justice BELT said:

"Sense of smell is often more unerring than that of sight. Lipton's tea might look ever so much like Scotch whisky and fool many people dependent solely upon sight, but few would be misled through the sense of smell. In *McBride v. United States,* 284 Fed. 416, federal officers passing along the street smelled the fumes of whisky, and without warrant seized the still located in a building. The court held the crime was committed in their presence and refused to suppress the evidence. In *State v. McAfee,* 107 N. C. 812, 12 S. E. 435, 10 L. R. A. 607, it was held that where an assault was so near the officer could hear the conversation and the

sound made by the blow, it was a breach of the peace in the presence of the officer, although he could not see the parties on account of darkness.''

■ *Day v. U. S.*, 37 Fed. (2d) 80, Judge KENYON on behalf of the Circuit Court of Appeals, stated: ''This court has many times held that where an officer of the law has direct personal knowledge from one or more of his five senses of sight, hearing, smell, touch, or taste that the suspected person is committing a crime in his presence, he may lawfully arrest him.'' Hence the mere fact that the officers acquired their information by an olfactory sensation as distinguished from sight did not require them to disregard it. The objective to be achieved is the acquirement of sufficient reliable information, however it may come, to constitute probable cause for making the arrest. The problem then arises whether the officers possessed enough evidence before they entered the house to constitute justification for their act.

■■ To justify an officer in making an arrest without a warrant mere suspicion is insufficient; likewise a belief unsupported by facts or circumstances will not justify his action. In *State v. Lee,* supra, this court said:

''It is not essential in making an arrest without a warrant that the officer must absolutely know that an offense is being committed. He must believe it is being committed and must so believe upon the evidence of his own senses.''

The officer must have probable cause to believe in the guilt of the suspected party, and probable cause has been defined as the existence of such circumstances which would lead a reasonably prudent man to believe in the guilt of the accused party: *Wiley v. State,* 19 Ariz. 346 (170 P. 869, L. R. A. 1918 D 373). See also

*Carrol v. U. S.*, 267 U. S. 132 (45 S. Ct. 280, 69 L. Ed. 543, 39 A. L. R. 790). From *Garske v. U. S.*, 1 Fed. (2d) 620, we quote:

"It is the well-established doctrine now throughout the United States that for a crime, which they have probable cause to believe is being committed in their presence, though it be a misdemeanor, duly authorized peace officers may make arrest without a warrant. The probable cause which will justify arrest for a misdemeanor without a warrant must be a judgment based on personal knowledge acquired at the time through the senses, or inference properly to be drawn from the testimony of the senses."

See also *State v. McDaniel,* supra.

■ The question therefore occurs whether the officers had probable cause to believe that a crime was being committed upon the premises in question. As previously stated testimony to the effect that they smelled the odors of cooking mash, the fumes of a still and the odors of kerosene oil was practically uncontradicted. Knox's testimony, slight as it was, was purely negative in character and related to a time when the distillation operations had stopped. Likewise the defendants did not challenge the contention that these odors came from No. 993 Council Crest drive. There is no evidence in the record which would warrant us in believing that any other house, garage, or structure existed in the near vicinity of No. 993. And since these smells of cooking mash and of distillation were found in an extensive residential district we cannot assume that some industrial or other operation, caused them. No one has questioned the testimony of the officers that mash fit for distillation, and a still which is in operation produce odors capable of being detected outside of the structure. There is neither any evidence in the record

disproving, nor any reason for disbelieving that such odors are distinctive. Hence the circumstances require us to find that odors of mash in the cooking process, and the fumes of whisky in the process of distillation were plainly noticeable within fifty feet of 993 Council Crest drive as the officers stood in the street at that point, and that the odors came from that house. To us it seems that a reasonably cautious person who had information that a distillery was in operation upon Council Crest drive, and who noticed the above odors as he stood within fifty feet of No. 993 would draw the conclusions that a crime was being committed there. We conclude that the above facts constituted probable cause as justification for the arrest of those operating the distillery.

■ The mere fact that the structure in which the suspected persons choose to commit their crime was a dwelling house, could not operate to prevent the officers from entering for the purpose of making the arrest even though they lacked a warrant. In *State v. Quartier,* supra, this court after reviewing the evidence which showed that ten days before the arrest the officer had detected the odor of mash in the immediate vicinity of the premises of the defendant, who bore the reputation of an illicit distiller, and that upon the day of the arrest he again detected the same odor, concluded:

"From these facts it clearly appears that Beeman, one of the deputy sheriffs, at the time he entered the house, knew that the felony of unlawfully possessing mash and a still was then being committed within the house. * * · * Therefore, by virtue of § 1763, Or. L., the deputy sheriff was authorized to arrest the defendant for this felony without a warrant, and according to the provisions of § 1764, Or. L., he had the right in making the arrest to enter the house."

In *McBride v. U. S.*, 284 Fed. 416, the circuit court of appeals sustained the validity of a search of an unoccupied house which was prompted by the fact that federal officers smelled the fumes of a still which issued from it. In *United States v. Borkowski*, 268 Fed. 408, a search was held lawful which was based upon the following facts: Officers detected the odor made by raisins in the process of cooking, and saw a light in the cellar of the suspected house where they could see some persons moving about. In a comprehensive footnote on page 201 of Cornelius Search & Seizure, a large number of cases are reviewed which sustained entries made by officers into a variety of structures for the purpose of arrest and seizure.

We conclude from the foregoing that the officers, before entering upon the premises of the defendants, possessed probable cause for believing that a distillery was in operation there, and that they were justified in entering the house for the purpose of arresting the persons responsible for the crime.

■ The question now presents itself whether the evidence justifies a conclusion that the officers entered for the purpose of searching, or for the purpose of apprehending an offender. It is true that the first officer who entered the house did not at once arrest Mrs. Gephart, she being the first individual he encountered; and it is also true that one of the officers upon cross-examination at the hearing of the motion to suppress the evidence stated that he entered the house to "take," the still. But none of the officers testified that their entry was for the purpose of making a search. The record, when taken in its entirety, quite clearly indicates that the object of the entry was to arrest those responsible for the crime and to seize the still. Duffy was apprehended the moment when he was encountered

in the still room, and Mrs. Gephart was arrested directly thereafter. The fact that two of the officers remained outside to prevent escapes from the premises is persuasive that the group went to this place to make arrests. We believe that a finding is warranted that the purpose of the entry was to arrest and not merely to search.

■ From the foregoing we conclude that the seizure of the properties found at No. 993 Council Crest drive was legal and not in violation of the aforementioned constitutional provisions.

We have carefully studied *Temperani v. U. S.*, 299 Fed. 365, upon which the appellants base their contention that the acts of the officers constituted an illegal search. Frankness commands the admission that the facts before the court in that case were not substantially different from those before us. The Federal Court believed that the entry was made for the purpose of a search. Section 25 of title 2 of the National Prohibition Act (Comp. St. Ann. Supp. 1923, § 10138½ M) prevents the issuance of warrants for the search of private dwelling houses except when a sale of liquor is charged, and § 6 of the supplementary act of November 23, 1921, provides that any officer who searches a dwelling house without a search warrant is guilty of a misdemeanor. These limitations convinced the court that the search could not be sustained. In disposing of the contention that it should deem the officer's entry as an act preliminary to the offender's arrest it expressed itself thus: "Laying all pretense aside, the officers entered the garage, not to apprehend an offender for committing an offense within their presence, but to make a search of the premises to obtain tangible evidence to go before a jury." The force of this conclusion is weakened somewhat by the able dissenting

opinion of Judge Gilbert. However, our review of the facts in the instant case convince us, as previously stated that the officers entered to make an arrest. In the Temperani case the decision points out that the "plaintiff in error took the witness stand in his own behalf and admitted the possession of the still." That being true the court held that "he is now in no position to claim that incompetent testimony was admitted to establish that fact." The same situation is true as to the appellant Duffy. He also took the witness stand as a witness in his own behalf and freely admitted the operation of the still as we have already pointed out. In the Temperani case the defendant's admission of the possession of the still resulted in an affirmance of the judgment of the lower court upon the first count of the indictment which accused him of the possession of the still. The same result would have to follow in the instant case so far as Duffy is concerned. Hence, even if our above reasoning is erroneous the judgment of the circuit court would have to be affirmed as to Duffy.

We now come to the question whether the search of the appellant Knox was valid. It will be recalled that he reached these premises at about 8:15 p. m., and sought to back his automobile into the street very hastily the moment when the officers approached his car. It will also be recalled that he identified himself as J. L. Morgan when requested to state his name. Prior to his visit to those premises the officers had found the name of Morgan upon numerous receipts in the house, together with the address of No. 993 Council Crest drive underneath that name. In Morgan's car the two copper baffle plates were discovered, together with an invoice from a sheet metal company representing the purchase of copper sheets and copper rivets.

Whether the search of Morgan preceded his arrest or followed it is not entirely clear, but we are willing to believe that the search preceded rather than followed the arrest. Nevertheless the two occurred within a very few moments of each other. When such acts are practically simultaneous and the officers already possess probable cause for believing in the guilt of the accused, the fact that the search precedes the arrest does not render it illegal: *State v. McDaniel,* supra. Moreover the search of an automobile can be more readily sustained than that of a stationary piece of property. *Carrol v. United States;* supra. And in the present instance the contemplated flight from these premises, where a distillery had been discovered, is especially significant in support of the search. Without the assistance of the information obtained by the contested search the officers in justification of Knox's arrest possessed the following facts: (1) His approach under cover of darkness upon premises where a distillery had been operating, (2) evidence of flight, (3) his self-identification as Morgan, and (4) the fact that surplus clothing upon the premises was of a size appropriate for him. It is our opinion that a conclusion was reasonably justifiable that the officers possessed probable cause to belive in his guilt when they made his arrest, independent of the facts acquired by the contested search. As previously stated having made the arrest they were justified in making the search.

There remains for consideration only the question whether the circuit court erred when it omitted instructions upon the subject of the crime of attempting to commit a crime. Section 14-1009, Or. Code 1930, recites:

"If any person attempts to commit any crime, and in such attempt does any act towards the commission

of such crime, but fails or is prevented or intercepted in the perpetration thereof, such person, when no other provision is made by law for the punishment of such attempt, upon conviction thereof, shall be punished as follows:  *   *   *''

The defendants requested no instructions. upon any lesser grades of the crime charged in the indictment. The rules of the circuit court of Multnomah county require a party who desires an instruction upon any matter to present a written request prior to the commencement of the arguments to the jury. The record indicates that the first mention which was made of the subject of lesser crimes occurred when defendant's counsel sought to argue thereon in his closing argument to the jury. The court directed him to refrain from so doing, explaining that it would not instruct upon anything except the crime charged in the indictment. At the conclusion of the instructions an exception was saved because of ''the failure of the court to instruct the jury that the defendants, or either of them, might be found guilty of any lesser crime than the one charged in the indictment.'' Since Duffy testified that he was engaged in the active operation of the still at a wage of $10 per day this contention cannot affect him. Knox claimed entire innocence and testified that he was bringing the papers found in his pockets containing the name ''Morgan'' and the baffle plates to these premises as a favor to Morgan, entirely ignorant of the purposes to which baffle plates were applied. Under our statute it is evident that before one can be guilty of an attempt to commit a crime it is necessary that the two following elements be present: (1) An intent to commit the attempted crime and (2) an ineffectual act performed in an effort to commit the crime. If the defendant's testimony was true he was neither

guilty of the crime mentioned in the indictment nor of an attempt to commit it; if the state's testimony was true he was guilty of the former crime: *State v. Wilson,* 127 Or. 294 (271 P. 742). We find it difficult to understand of what lesser crime the jury could have convicted Knox without doing violence to the facts. It is evident that error cannot be predicated upon the omission of the trial judge to instruct as to a lesser grade of the offenses charged when the evidence does not warrant a reduction of the offense to the lesser grade. Blashfield's Instructions to Juries (2d Ed.), § 408. Ordinarily it is not error for the court to omit an instruction upon the lesser crime included within the greater where the defendant has failed to request an instruction upon the same: Randall's Instructions to Juries, § 315; 16 C. J., Criminal Law, § 2451, p. 1024. *State v. Reyner,* 50 Or. 224 (91 P. 301). It is our opinion that under the circumstances the circuit court's failure to instruct upon the subject of an attempt to commit the crime of operating a still and the character of proof applicable thereto did not constitute an error.

Having arrived at the above conclusions it necessarily follows that this appeal does not reveal any error. The judgment of the circuit court will be affirmed.

BEAN, C. J., RAND and KELLY, JJ., concur.