Argued November 1, 1967, affirmed April 24, 1968

## STATE OF OREGON, *Respondent, v.*
## FRANCIS LEVI ELK, *Appellant.*
439 P. 2d 1011

*Gary D. Babcock,* Deputy Public Defender, Salem, argued the cause and filed the brief for appellant.

*Arthur R. Barrows,* Deputy District Attorney, Pendleton, argued the cause and filed the brief for respondent.

Before PERRY, Chief Justice, and McALLISTER, O'CONNELL, GOODWIN, DENECKE, HOLMAN and WOODRICH, Justices.

WOODRICH, J. (Pro Tempore).

Defendant was convicted of burglary not in a dwelling. He assigns as error the trial court's denial of his pre-trial motion to suppress certain evidence allegedly obtained by an illegal search and seizure.

On Sunday, September 25, 1966, the Pendleton sheriff's office and the Oregon State Police learned of the theft of a shot gun from a pickup truck parked on a reservation near Pendleton. The police were in-

formed by the owner of the gun that a blue 1957 or 1958 Oldsmobile or Pontiac had been seen very near the pickup just prior to the theft. When he went on shift at 4:00 p.m., September 25, 1966, State Police Officer Rothermel was advised of the theft, the description of the suspected vehicle, and the description of the stolen gun. There was some confusion in the officer's information over the precise make of the stolen shot gun. While on patrol Officer Rothermel was advised as to the location of a car similar to the one described as having been seen near the scene of the theft. About 7:00 p.m., September 25, 1966, Officer Rothermel found the car unoccupied on a side road in a rural area east of Pendleton. The front of the car was headed into the roadside ditch near a fence. The rear of the car projected into the traveled portion of the roadway about two feet. The officer was immediately suspicious that the vehicle was the one described as having been near the scene of the theft.

The officer stopped and upon investigation observed that the trunk lid was open approximately 12 or 13 inches. Without touching the vehicle he was able to see into the open trunk sufficiently to notice the butt of a shot gun or rifle and a quantity of beer. Upon seeing the butt of the gun he immediately suspected this of being the stolen shot gun. The officer did not obtain a search warrant. The officer raised the trunk lid further and determined from the serial number of the shot gun that it was in fact the stolen gun. He also observed that the trunk was full of beer, extending from one side of the trunk to the other and stacked to a height within six inches of the body line of the trunk. The beer was later counted and determined to be 40 unopened six-pack cases of beer. Prior

to further raising the lid of the trunk, the officer was not able to verify that the gun was a shot gun nor was he able to determine the quantity of beer located in the trunk. At the time the officer investigated the suspect vehicle he knew who was the owner of the vehicle.

He did not feel himself endangered when he looked into the trunk because he knew the car was unoccupied. Either at the time of Officer Rothermel's raising the trunk lid or shortly thereafter other officers arrived at the scene. The shot gun and beer were removed from the vehicle and taken into custody. The vehicle was later towed into town. After the gun was identified the officers searched the area and as soon as the defendant was located he was arrested on a charge of larceny. The arrest followed the raising of the trunk lid by some 20 to 25 minutes and was effected at a distance of 200 to 250 yards from the vehicle.

After the officers had seized the shot gun and beer, and after the larceny arrest, it was learned by the officers that an amount of beer had been stolen from the burglary victim and the defendant was subsequently arrested for this crime. The officers had not been advised of the theft of the beer at the time the shot gun and beer were seized or at the time the defendant was arrested for the theft of the shot gun, but at the time of its discovery Officer Rothermel suspected that the beer was stolen. The defendant was not questioned about the beer at the time of his original arrest.

The trial court's refusal to suppress the evidence in question was apparently based on the premise that no search was necessary to disclose the fruits of the crime in question.

"Search implies invasion and quest, and that

implies some sort of force, actual or constructive, much or little." *State v. Hilton,* 119 Or 441, 445, 249 P 1103 (1926).

It could be argued that there was no "invasion" of the defendant's privacy in this case because the defendant by leaving his car trunk partially opened made no effort to keep its contents from public view. Because of the holdings later in this opinion, we need not decide whether the officer's minimal raising of a partially opened car trunk lid elevated his conduct to the status of a search.

The state argues that if the officer's conduct is deemed to be a search, it was made as an incident to a lawful arrest. An exception to the demand for a search warrant exists where the search is made as an incident to a lawful arrest. *State v. Roderick,* 243 Or 105, 412 P2d 17, 243 Or 438, 414 P2d 351 (1966); *State v. Chinn,* 231 Or 259, 373 P2d 392 (1962). The state relies on ORS 133.310(3), which provides:

"ORS 133.310. A peace officer may arrest a person without a warant:

"* * * *

"(3) When a felony has in fact been committed or a major traffic offense, as defined in subsection (5) of ORS 484.010, has been committed, and he has reasonable cause for believing the person arrested to have committed it * * *."

To justify an officer in making an arrest without a warrant mere suspicion is insufficient. Likewise, a belief unsupported by facts or circumstances is insufficient, but it is not essential that the officer absolutely know that an offense is being committed. *State v. Duffy et al,* 135 Or 290, 295 P 953 (1931). The officer must have probable cause to believe in the

guilt of the suspected party; that is, circumstances must exist which would lead a reasonably prudent man to believe in the guilt of the accused. *State v. Duffy,* supra. In determining the existence of probable cause, only those facts known to the officer prior to his alleged search may be considered, because of the rule that an unlawful search is not made lawful by the evidence of crime which it brings to light. *State v. Roderick,* supra; *State v. Chinn,* supra.

■ The defendant concedes that no search was conducted until the officer lifted the lid of the car trunk. At that time the officer had reliable information that the crime of larceny had been committed; that the larceny was accomplished from the bed of a pickup truck parked on a reservation near Pendleton, a sparsely settled area; that a car described as to make, year and color was seen in the vicinity of the larceny; and that a shot gun was the subject of the larceny. The officer knew the make and serial number of the shot gun. Armed with this knowledge the officer discovered a car matching the description previously given, parked partly in a ditch on a country road in a remote area out of Pendleton, with the butt of a shot gun or rifle visible in the trunk of the car. We hold that these facts would warrant a reasonably prudent man to believe that the owner of the car was guilty of the larceny of the shot gun. Absolute knowledge may not have been possible until the officer checked the serial number on the gun and made some other investigation, but as noted above, absolute knowledge is not a precondition to making a valid arrest for a felony without a warrant.

■■ The exception to the requirement for a warrant, where the search and seizure is made as an incident to a lawful arrest, is founded upon the necessity

to protect the police and to enable the police to gather the fruits of the crime. *State v. Chinn,* supra. To come within the exception, the search must be an incident of the arrest and must be reasonable. The principles to be applied were set out in *State v. Chinn,* supra, and need not be restated. Recent authorities on the warrantless search of an automobile are fully set forth in the case of *State v. McCoy,* 249 Or 160, 437 P2d 734 (decided February 21, 1968).

In determining the reasonableness of a given search the courts are more willing to sanction searches of automobiles than searches of other types of property. *Preston v. United States,* 376 US 364, 84 S Ct 881, 11 L Ed 2d 777 (1964); *Cooper v. California,* 386 US 58, 87 S Ct 788, 17 L Ed 2d 730 (1967); *State v. McCoy,* supra; *State v. Hoover,* 219 Or 288, 347 P2d 69 (1959). In the instant case the search preceded the arrest by 20 to 25 minutes. During this interval the officers were continuously seeking the defendant. The arrest and search were a part of one uninterrupted transaction. The officers knew that the defendant had two companions with him when the car was seen earlier in the vicinity of the larceny. It was a remote rural area and it was highly likely that defendant and his companions were in the immediate vicinity of the car. It was important for the officers to verify or dispel the belief that the defendant and his companions, who were likely to be in the area, were criminals or innocent persons. If innocent, it would certainly be in the defendant's interest to have that fact established prior to arrest. If guilty, it would be important for the officers in deciding what approach to take toward apprehension of the malefactors.

■ If probable cause for an arrest exists independently of evidence brought to light by the search, the

fact that the search precedes the arrest does not render the search unreasonable nor destroy its character as an incident of the arrest. *State v. Chinn*, supra; *State v. Hoover*, supra; *State v. McDaniel*, 115 Or 187, 231 P 965, 237 P 373 (1925); *People v. Williams*, 67 Cal2d 226, 430 P2d 30, 60 Cal Rptr 472 (1967). In the last cited case, the defendant burglarized a men's clothing store at night and thereby triggered an alarm. A nearby police unit was advised by radio that the alarm in the store was ringing. Upon seeing defendant's car alone on the street at 5:30 a.m., one and one-half blocks from the scene of the burglary the officer made a U-turn and followed him. When defendant was signaled to stop he sought to evade the police by high-speed evasive tactics. Defendant ultimately stopped his car and fled on foot. The police entered the trunk of defendant's car and seized 29 men's suits, the fruit of the burglary. Fifteen or twenty minutes later defendant was located and arrested in the rear of a house one block from the defendant's car. The court held that the search was an incident of a lawful arrest, as the police had probable cause to arrest based on information known to them prior to the search. The search was held not remote in time or space from the site of the arrest. In the instant case, in examining "the total factual situation in the light of the constitutional right of privacy," *State v. Chinn*, supra, we find the search reasonable in relation to time and space.

A search can nonetheless be unreasonable if it is of undue intensity. *State v. Chinn*, supra. Here, the invasion, assuming there was an invasion, of defendant's privacy was minimal. Immediately upon a further raising of the trunk lid the shot gun and the 40 cases of beer were in plain sight and fully visible.

No exploration or ransacking was necessary. The articles seized were directly related to the crime of larceny. The officers seized the shot gun and some hand tools previously stolen by the defendant from the pickup. These are articles that were subject to seizure. ORS 141.010(1); *State v. Chinn,* supra.

█ Evidence is not rendered inadmissible merely because an opportunity may have existed to obtain a search warrant. *United States v. Rabinowitz,* 339 US 56, 70 S Ct 430, 94 L Ed 653 (1950); *State v. Chinn,* supra. In the instant case it is doubtful, in any event, whether the officers had a meaningful opportunity to obtain a search warrant. The officer came upon the suspect vehicle in a remote area on a Sunday, not knowing that it would be carrying the fruits of a crime. The officer knew that the occupants, in all likelihood, were lurking nearby, and, in fact, were soon discovered nearby. To require an immediate halt to the investigation, to seek out a magistrate and prepare the necessary papers to obtain a warrant, under these circumstances, appears to be unreasonable.

█ Lastly, the defendant argues that even if the search and seizure of the shot gun is deemed lawful, the seizure of the beer was not. He relies on *State v. Elkins,* 245 Or 279, 422 P2d 250 (1966). If the police, in the course of a lawful search on one crime, discover the fruits of another crime, even though such other crime be a more serious one, the newly discovered evidence may be seizable. *State v. Krogness,* 238 Or 135, 388 P2d 120 (1964); *State v. Johnson,* 232 Or 118, 374 P2d 481 (1962). *Elkins* does not hold to the contrary, but before the newly discovered evidence is seizable the officers must have a factual basis for suspicion of the newly discovered evidence.

"* * * However, we believe the balance be-

tween the public and the individual requires some protection for individual property rights by way of at least a minimal factual basis for the officer's suspicion and resultant seizure of property unrelated to the crime for which the arrest is made. The plain wording of the constitutional mandate requires it." *State v. Elkins*, 245 Or at 291.

In the instant case the officers had probable cause to believe the car had been involved in a larceny; the fruits of the larceny were positively identified as such as a result of a lawful search; the fruits of the larceny were commingled with the beer in the trunk of defendant's car; and the beer was of a most unusual quantity (it filled the trunk of the car to within 6 inches of the body line of the trunk). The officers knew the defendant. These facts were sufficient cause upon which to base the officer's belief that the beer was stolen. The requirements of *State v. Elkins*, supra, are met in this case.

The trial court correctly denied defendant's motion to suppress.

Affirmed.

O'CONNELL, J., specially concurring.

The majority opinion upholds the search in the present case on the ground that it was incident to the arrest. This is erroneous. A search and seizure cannot be an "incident" of an arrest which took place at a later time. It is not made any the more so by assertions that "the arrest and search were part of one uninterrupted transaction" or that the search is "not remote in time or place from the site of the arrest."

However, the search and seizure in the present case can be upheld upon another ground. The information Officer Rothermel had received, together with his ob-

servations before lifting the trunk lid, was sufficient to give him probable cause to believe that the stolen gun was in the trunk. Upon the basis of this information, there would have been no difficulty in obtaining a search warrant. But to obtain a warrant it would have been necessary for Rothermel to leave the car and if he left it he could not know when the person who drove the car there would return and drive it away together with the evidence in it. Rothermel had been informed that those who had driven up in the car were in the immediate vicinity. Because of the risk of losing the evidence if a warrant were sought, it was impracticable to obtain a warrant. Under these circumstances a search of the trunk was reasonable.

In the course of the lawful search the officer observed the beer. According to his description "the trunk was full of it." The large quantity of beer, the fact that it was with other stolen property, the location of the car, and other factors were sufficient to give the officer probable cause to believe that the beer had been stolen. The officer, having probable cause to believe that the beer was stolen, had the right to seize it. The principle is essentially the same as that which is applied when an officer in the course of searching pursuant to a warrant or as an incident to an arrest discovers evidence of a crime other than that which prompted the search. In such cases the officer is entitled to seize what he observes if he has probable cause to believe that it is evidence of the commission of another crime.

HOLMAN, J., concurs in this opinion.

DENECKE, J., specially concurring.

I concur in that part of the specially concurring opinion stating that the officer had probable cause to

search the trunk for the stolen gun and that it was impracticable to secure a warrant. I am not called upon to decide a case in which it was practicable to secure a warrant but none was secured.

I believe it is a close question whether the officer had probable cause to seize the beer. It is not necessary to decide that question. The officers had the right, and perhaps owed the defendant the duty, to impound the defendant's car and its contents. See ORS 142.210. I interpret the testimony of the officers to be that they did not seize the beer but took it into their custody, and inventoried it, for safekeeping. They did this before they had the car towed in for storage. They did the same with tools and wrenches which were found in the trunk. There is no claim that these tools and wrenches were not the property of the defendant (except a saw) and no suspicion was ever voiced that the officers believed these tools and wrenches (except the saw) were the fruits or evidence of a crime. There is no inference that the officers used the right or duty to impound the car as a subterfuge to search the car.

After the officers learned that the beer was stolen there is no constitutional reason they cannot change the motive for their custody of the beer.

McALLISTER, J., joins in this specially concurring opinion.