BALDWIN, J.,
dissenting.
In this case, several officers deliberately violated defendant’s privacy rights protected by Article I, section 9, of the Oregon Constitution. After two of the officers entered defendant’s backyard, they approached a sliding glass door connected to defendant’s bedroom. Detective Roberts knocked on the glass door, looked through it. and observed defendant. Awakened by the intrusion, defendant opened the door. Roberts asked to enter the residence to look around, and defendant allowed him and the other officers to do so. The officers then discovered illegal drugs in defendant’s residence. Today, by declining to suppress the evidence obtained as a result of that deliberate violation of defendant’s privacy rights, the majority departs from longstanding precedents of this court protecting the privacy rights of citizens in their homes from warrantless governmental intrusions.
Without a search warrant, the officers went to defendant’s residence early on a Sunday morning to investigate suspected drug activity. To be sure, the officers’ conduct in knocking on the front door of the residence accessible to the public was appropriate and necessary based on the information that they had received. However, rather than staying within the constitutional bounds of a proper investigation, the officers chose to pursue an illegal course of action. Freelancing, the officers entered defendant’s backyard and approached a private entrance to defendant’s bedroom. Detective Scharmota testified that, when defendant came to the door, “[h]e had just gotten out of bed. He complained of some back pain, he was pretty sore.” The trial court found that defendant “awoke to the knock on the slider door in the back and the [detectives] allowed him to put a robe on” and that “it was obvious that the girlfriend was still in the bed” when the detectives entered defendant’s bedroom.
*123 On review of the trial court’s denial of defendant’s motion to suppress, the Court of Appeals rejected the state’s argument “that the officers’ trespass did not taint the defendant’s consent.” State v. Unger, 252 Or App 478, 487, 287 P3d 196 (2012). Betraying incredulity, the unanimous panel opined that, “if the state’s argument were correct, officers could break into an individual’s home, sit inside and wait for the defendant to return home, and then ask the defendant for consent to search the home.” Id. at 487-88. The court concluded,
“In sum, the officers violated defendant’s constitutional rights by trespassing on his property, and that violation tainted his subsequent consent to the officers’ entry into and search of his house. As a result, all evidence obtained as a result of the entry and search should have been suppressed.”
Id. at 488.
According to the rule now adopted by the majority, police officers may deliberately violate the privacy rights of citizens in their homes when, as here, they knock on a private back door, startle an occupant, ask to search the occupant’s home, and then exploit the fiction of a consensual search if evidence of a crime is found in the home. If no evidence of a crime is found, the occupants will simply be required to endure the unreasonable governmental intrusion without a legal remedy. Article I, section 9, now provides no protection against such a warrantless search if the officers are well-mannered and courteous as they violate the constitutional rights of the occupants.
The Court of Appeals properly followed State v. Hall, 339 Or 7, 115 P3d 908 (2005), to determine the appropriate resolution of this case. Under Hall, where, as here, a defendant’s consent is tainted by illegal police conduct,
“the state must prove that the defendant’s consent was independent of, or only tenuously related to, the illegal police conduct. As * * * explained in Hall,
“‘consent is insufficient to establish the admissibility of evidence from a warrantless search if the state cannot prove that the consent was independent of, or only *124 tenuously related to, any preceding violation of the defendant’s rights under Article I, section 9. Unless the state is able to make that showing, then the defendant’s consent cannot operate to validate a warrantless search because the defendant’s consent itself derived from a violation of the defendant’s rights under that state constitutional provision. To not require suppression in such circumstances would be inconsistent with the previously described rationale underlying the Oregon exclusionary rule, that is, to place a defendant in the same position as if the governmental officers had acted within the bounds of the law.’”
Unger, 252 Or App at 485 (emphasis in original).
Here, the state could not demonstrate that defendant’s consent was independent of or only tenuously related to the officers’ unreasonable intrusion:
“The trespass gave the officers the opportunity to obtain defendant’s consent. In addition, the trespass was ongoing when the officers obtained defendant’s consent to enter his house; the officers were standing, illegally, at the back of defendant’s house when they obtained his consent to enter. That is, they were violating his rights when they asked if he would waive them. Indeed, he was facing a trespass by the very persons he would call to report a trespass.”
Id. at 486.
Remarkably, under circumstances that include a startled and shaky consent to search a private residence, the majority decides to diminish the constitutional protection of Article I, section 9, because “the exploitation test announced in Hall does not account sufficiently for the importance of a defendant’s voluntary consent.” 356 Or at 77. In my view, the majority has not adequately explained why the constitutional protection of Article I, section 9, should be relaxed when police officers unreasonably intrude into a private area of a home for the purpose of obtaining a consent to search the home.
The majority’s analysis appears to be based on a premise that the illegal conduct of the police had dissipated by the time that the officers made a specific request to search defendant’s home. It had not. As recognized by the Court of *125 Appeals, the officers continued to violate defendant’s right to privacy: “[W]hen the officers obtained defendant’s consent to enter his house * * * they were violating his rights when they asked if he would waive them.” Unger, 252 Or App at 486. Although the majority appears to still require that the state prove that the defendant’s consent was sufficient to attenuate the taint of the illegal police conduct, the state has not demonstrated such attenuation in this case. The state is unable to do so, in part, because the illegality was ongoing at the time that the officers made the request to search defendant’s home.
The majority cites no evidence produced by the state — no facts — tending to prove that the ongoing illegal police conduct was only a minor or remote cause of defendant’s consent. See, e.g., State v. Rodriguez, 317 Or 27, 41, 854 P2d 399 (1993) (where officer “did not trade on or otherwise take advantage of the [unlawful] arrest to obtain defendant’s consent to the search,” evidence did not require suppression). The majority then concludes that the officers’ intrusion into a private area of defendant’s home did not substantially affect the consent that he gave moments after the officers awoke him in his bedroom with his girlfriend. To state that conclusion is to refute it. Defendant, abruptly awakened and visibly experiencing back pain, was undressed at the time that the officers knocked at his bedroom door; he asked to be allowed to put on a robe. To be blunt, the “consent” obtained in this case is a fiction. Moreover, on these facts, to conclude that the state has met its burden of demonstrating that the illegal conduct of the officers did not substantially affect defendant’s “consent” is likewise a fiction.
Thus, while the majority purports to retain the requirement that the state has the burden of proving that the taint from illegal police conduct has been attenuated, that requirement is dispensed within this case. Even though the state has failed to meet its burden of proving attenuation, the majority now holds that the “purpose and flagrancy” of the illegal police conduct is “relevant to whether a defendant’s consent resulted from exploitation of police misconduct.” 356 Or at 81 (citing Brown v. Illinois, 433 US 590, 603-04, 95 S Ct 2254, 45 L Ed 3d 416 (1975)). Now, if *126 the illegal conduct by the police does not offend the majority’s sensibilities under the ambiguous standard of purpose and flagrancy, the privacy rights of a citizen may be violated without consequence. In effect, the majority has shifted the burden to citizens to prove that the purpose or flagrancy of the illegal conduct in some way merits enforcement of their constitutional right to privacy. If a citizen does not meet that burden, the constitutional rights of the citizen do not merit enforcement. That represents a sharp departure from the “principled view of the effect of an unlawful seizure of evidence” adhered to by this court for decades. State v. Davis, 295 Or 227, 237, 666 P2d 802 (1983).
I also take exception to the majority’s reliance on dictum in United States v. Perea-Ray, 680 F3d 1179 (9th Cir 2012), as permitting the type of governmental intrusion that occurred here under the Fourth Amendment. In Perea-Ray, Border Patrol agents violated the defendant’s Fourth Amendment rights when they entered his carport and searched the area without a warrant. The court suppressed evidence of a crime because an agent “intrude [d] into an area of the curtilage [the carport] where uninvited visitors would not be expected to appear * * * [therefore, by trespassing on the curtilage and detaining Perea-Ray, [the agent] violated Perea-Ray’s Fourth Amendment rights.” Id. at 1188-89. Notably, in distinguishing other proffered authority, the Ninth Circuit emphasized that the police encounter with the defendant in a private area of his property “was neither consensual nor in a public area of motel or apartment building.” Id. at 1189 n 5.
Further, I dissent because the majority opinion, in addition to effectively overruling Hall, also seriously undermines the stability of other Article I, section 9, cases decided by this court.
Contrary to prior case law, the majority appears to view the conduct of the officers here as no more than a simple trespass. A neighbor or stranger may trespass. But this court has held that the warrantless intrusion by a police officer into the protected area of a home is a constitutional violation of the privacy rights of a citizen by the government. In my view, the rule fashioned by the majority today permits *127 a deliberate governmental intrusion into the privacy interests of citizens in their homes. See State v. Tanner, 304 Or 312, 321 n 7, 745 P2d 757 (1987) (“Rights under section 9 are defined not by privacy one expects but the privacy one has a right to expect from the government” (Emphasis in original.)). By viewing the police intrusion here as a simple trespass, the majority has forgotten the protection that this court has historically afforded citizens against unreasonable governmental intrusions into their privacy interests. See State v. Campbell, 306 Or 157, 170-71, 759 P2d 1040 (1988) (“[B]oth laws and social conventions have long recognized the right to exclude others from certain places deemed to be private. If the government were able to enter such places without constitutional restraint, ‘the people’s’ freedom from scrutiny would be substantially impaired.”). See also Tanner, 304 Or at 321 (“Residence in a house is uniformly deemed to be a sufficient basis for concluding that the violation of the privacy of the house violated the residents’ privacy interests * * *.”); State v. Dixson/Digby, 307 Or 195, 211, 766 P2d 1015 (1988) (“Allowing the police to intrude into private land, regardless of the steps taken by its occupant to keep it private, would be a significant limitation on the occupant’s freedom from governmental scrutiny. Article I, section 9, does not permit such freewheeling official conduct.”).
The majority errs by not recognizing the importance of the privacy interests at stake in this case. More than 50 years ago, Justice Kenneth O’Connell emphasized the critical importance of this court recognizing the full constitutional dimensions of its search and seizure decisions under Article I, section 9:
“The fundamental fallacy in the position taken by the majority is in viewing the law of search and seizure as if it had no constitutional content. The majority puts the problem in terms of weighing the interest of efficient law enforcement against the interest of the citizen to be free from an inordinate invasion of his privacy. The problem is treated as if it involved nothing more than a tort principle comparable to that which extends a privilege of entry upon private property to a fireman or policeman in carrying out a governmental function. In search and seizure cases the interest which is our principal concern is the citizen’s *128 interest in being free from surveillance by executive officers of the government. The interest may be evaluated in terms of the danger which prompted the adoption of the Fourth Amendment. The amendment was adopted not simply to protect the citizenry from the inconvenience and embarrassment attending the entry of officers into their homes, but to put a check on executive action which might endanger political freedom. The amendment was drafted by those who had a fresh recollection of the abuses which had been exercised in the course of subjugating citizens to the will of despotic leaders. The danger of such abuses is still present. As Mr. Justice Frankfurter said in his dissent in United States v. Rabinowitz, 339 US at 82, 70 S Ct at 442, 91 L Ed at 669:
‘“The progress is too easy from police action unscru-tinized by judicial authorization to the police state.’
«Hs Hi * * *
“Article I, § 9, Oregon Constitution, and the Fourth Amendment should be construed in light of these dangers, ‘so as to prevent stealthy encroachment upon or “gradual depreciation” of the rights secured by them, by imperceptible practice of courts or by well-intentioned but mistakenly overzealous executive officers.’ Gouled v. United States, 255 US 298, 304, 41 S Ct 261, 263, 65 L Ed 647, 650 (1921).”
State v. Chinn, 231 Or 259, 295-96, 373 P2d 392 (1962) (O’Connell, J., dissenting) (footnote omitted).
Here, the majority has undervalued defendant’s privacy interest in a private entrance to his bedroom. The sliding glass door was not a public entrance to the residence. The door was accessible only from a private backyard porch, and the porch was not accessible to the public. Under Article I, section 9, defendant has a right to be protected from a governmental intrusion into this private area of his home. See Dixon/Digby, 307 Or at 211-12; Campbell, 306 Or at 170; Tanner, 304 Or at 320-21. See also United States v. Struckman, 603 F3d 731, 746 (9th Cir 2010) (defendant’s backyard was curtilage subject to Fourth Amendment protections); Quintana v. Com., 276 SW3d 753, 760 (Ky 2008) (“A back yard is not normally an area that the general public would perceive as public access. While the back yard may *129 not always enjoy the protection of the curtilage, it is a rare one that does not.”); State v. Lewis, 675 NW2d 516, 523 (Iowa 2004) (area of backyard and porch “intimately associated with domestic life and the privacies of [defendant’s] home” considered protected curtilage).
Further, by failing to enforce the exclusionary rule in this case, the majority undermines this court’s Article I, section 9, jurisprudence. The origins of this court’s commitment to a rule excluding from criminal prosecutions evidence obtained as a result of an illegal search or seizure is nearly a century old. See State v. Laundy, 103 Or 443, 493-94, 204 P 958 (1922) (expressing approval of rationale for exclusionary rule adopted in Weeks v. United States, 232 US 383, 34 S Ct 341, 58 L Ed 652 (1914)). For decades, Oregon courts have protected the privacy rights of its citizens by faithful adherence to the seminal case of Davis, 295 Or 227.
In Davis, this court suppressed evidence obtained during a warrantless entry and search of the defendant’s motel room and the search of his person after arrest. The search and seizure was not supported by probable cause, and reasonable suspicion alone was held insufficient to legalize police entry into the defendant’s motel room. The court in Davis undertook to “review the basis upon which unlawfully seized evidence has been held inadmissible in this state.” Id. at 231. After an exhaustive review of Oregon cases and United States Supreme Court cases, the court rejected a deterrence rationale for an exclusionary rule in favor of an approach that vindicates the personal rights of the person whose rights have been violated. In rejecting a deterrence rationale for the exclusion of evidence, the court quoted from the then recent case of State v. McMurphy, 291 Or 782, 785, 635 P2d 372 (1981):
“[T]he deterrent effect on future practices against others, though a desired consequence, is not the constitutional basis for respecting the rights of a defendant against whom the state proposes to use evidence already seized. In demanding a trial without such evidence, the defendant invokes rights personal to himself.”
Id. at 235.
*130 The court in Davis further explained the rationale for a vindication of rights approach to the exclusionary rule:
“Thus this court has looked, rather, to the character of the rule violated in the course of securing the evidence when deciding whether the rule implied a right not to be prosecuted upon evidence so secured. From the beginning this consequence has been most obvious to courts when officers purporting to execute a judicial warrant seized evidence not covered by warrant * * * or when the warrant was wrongfully obtained * * * But the principle is the same in warrantless seizures, because an officer can seize nothing without a warrant that could not properly be seized with a warrant if a magistrate had been at the officer’s elbow.
«* * * * *
“In summary, although not without some diversity of expression, the court since State v. Laundy, supra, has held to a principled view of the effect of an unlawful seizure of evidence. It has maintained the principle that those rules of law designed to protect citizens against unauthorized or illegal searches or seizures of their persons, property, or private effects are to be given effect by denying the state the use of evidence secured in violation of those rules against the persons whose rights were violated, or, in effect, by restoring the parties to their position as if the state’s officers had remained within the limits of their authority.”
Davis, 295 Or at 235, 237 (internal citations omitted).
Notably, this court in Davis rejected the state’s invitation “to stretch” exceptions to the warrant requirement to justify the police officers’ actions in unlawfully entering defendant’s motel room. Id. at 243. In declining that invitation, the court emphasized the vital function of the judicial branch in protecting the privacy interests of citizens in their homes:
“The very purpose of our constitutional provision was to protect a person’s home from governmental intrusions. State v. Chinn, supra. This right against intrusion should be stringently protected by the courts. See[J e.g., Warden v. Hayden, 387 US 294, 304, 87 S Ct 1642, 1648, 18 L Ed 2d 782 (1967), construing the similar provision of the federal constitution. As such, any exceptions to the warrant requirement should be narrowly and carefully drawn. See *131 Jones v. United States, 357 US 493, 499, 78 S Ct 1253, 1257, 2 L Ed 2d 1514 (1958).”
Davis, 295 Or at 243.
In a later Davis case, this court announced an unambiguous exclusionary rule with respect to evidence illegally obtained from outside the state:
“This focus on individual protection under the exclusionary rule, a rule that operates to vindicate a constitutional right in the courts, supports the constitutional rule that we announce here: If the government seeks to rely on evidence in an Oregon criminal prosecution, that evidence must have been obtained in a manner that comports with the protections given to the individual by Article I, section 9, of the Oregon Constitution. It does not matter where that evidence was obtained (in-state or out-of-state), or what governmental entity (local, state, federal, or out-of-state) obtained it; the constitutionally significant fact is that the Oregon government seeks to use the evidence in an Oregon criminal prosecution. Where that is true, the Oregon constitutional protections apply.”
State v. Davis, 313 Or 246, 254, 834 P2d 1008 (1992) (emphases in original).
The court anchored the exclusionary rule in Article I, section 9, cases in that provision’s guarantee that citizens be held secure against unreasonable searches and seizures. Thus, this court has recognized that privacy rights are not effectively secured unless the exclusionary rule precludes the government from obtaining a criminal conviction based on evidence that results from a violation of a defendant’s Article I, section 9, rights:
“Article I, section 9, of the Oregon Constitution, provides:
“‘No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure * * *.’
“*** The right guaranteed by Article I, section 9, is the right to be ‘secure *** against unreasonable search, or seizure.’ If that constitutional right to be ‘secure’ against impermissible government conduct is to be effective, it must mean that the government cannot obtain a criminal conviction through the use of evidence obtained in violation of a *132 defendant’s rights under that provision. State v. Davis, 295 Or 227, 666 P2d 802 (1983); see also State v. Isom, 306 Or 587, 595, 761 P2d 524 (1988) (‘[T]he state may not prove, over objection, any crime with unconstitutionally obtained evidence.’).”
Davis, 313 Or at 253 (emphasis added). Here, contrary to Davis, the government has been allowed to obtain a criminal conviction based on evidence that is a product of a violation of defendant’s Article I, section 9, rights.
As previously noted, this court has repeatedly affirmed that the protection of a person’s home from unreasonable governmental intrusions is at the core of the privacy interests guaranteed by Article I, section 9. Just last year, we said that the privacy interests of citizens in their homes were “inviolate”:
“An ultimate objective of the constitutional protections, both state and federal, against unreasonable searches and seizures is ‘to protect the individual in the sanctity of his [or her] home[.]’ State v. Duffy et al., 135 Or 290, 297, 295 P 953 (1931); see generally State v. McDaniel, 115 Or 187, 204-05, 231 P 965 (1925) (discussing constitutional protections against unreasonable searches and seizures as rooted in common law protection for sanctity of home). The degree to which law enforcement conduct intrudes on a citizen’s protected interest in privacy and liberty is significantly affected by where the conduct occurs, such as in the home, in an automobile, or on a public street. See State v. Tourtillott, 289 Or 845, 865, 618 P2d 423 (1980) (so observing under Fourth Amendment to United States Constitution). A government intrusion into the home is at the extreme end of the spectrum: ‘Nothing is as personal or private. Nothing is more inviolate.’ Id.”
State v. Fair, 353 Or 588, 600, 302 P3d 417 (2013) (emphasis added). But today, by declining to suppress the evidence in this case, the majority concludes that the privacy interests of citizens in their homes are not secure and may be violated.
This court has observed that the “undeniable importance of stability in legal rules and decisions *** applies with particular force in the arena of constitutional rights and responsibilities, because the Oregon Constitution is the fundamental document of this state and, as such, should *133 be stable and reliable.” Stranahan v. Fred Meyer, Inc., 331 Or 38, 53, 11 P3d 228 (2000). Although we have recognized that the court must remain willing to reconsider prior decisions based on principled arguments, the majority has not explained how it reaches any principled arguments advanced by the state in this case, when the state has not met its burden of proving that the officers did not exploit their illegal conduct to obtain defendant’s consent. Thus, the majority is not justified in modifying the constitutional rule adopted in Hall and in undermining the stability of other Article I, section 9, decisions. See also State v. Ciancanelli, 339 Or 282, 290-91, 121 P3d 613 (2005) (applying Stranahan and declining to overturn 20-year-old constitutional precedent).
By not enforcing the exclusionary rule in this case, the majority has failed to secure defendant’s right to privacy in his home as guaranteed by Article I, section 9, of the Oregon Constitution. Without justification, the majority’s decision today diminishes the privacy rights of citizens previously protected by this court and sharply departs from “the principled view of the effect of an unlawful seizure of evidence” faithfully adhered to by this court for decades. State v. Davis, 295 Or at 237. In my view, this judicial failure may well have the general effect of permitting deliberate warrantless intrusions by the government into the privacy rights of other citizens in their homes. I therefore respectfully dissent.
Walters, J., joins in this opinion.